MATTER OF QUINTERO-CORREA

In Deportation Proceedings

A-12774443

*Decided by Board January 14, 1964*

Arrival in the United States as a workaway aboard a freighter does not preclude adjustment of status under section 245, Immigration and Nationality Act, as amended, in the case of an alien who has no background as an occupational seaman, who was in possession of a valid unexpired nonimmigrant visa, and who was inspected and admitted as a temporary visitor for pleasure.

CHARGES:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant (temporary visitor for pleasure)—remained longer.

The special inquiry officer, in a decision dated September 23, 1963, denied the respondent's application for adjustment of status, ante; granted him the privilege of voluntary departure; and provided for his deportation to Colombia on the charge contained in the order to show cause in the event of his failure to so depart. The appeal, which brings the case before this Board for consideration, challenges only the denial of adjustment of status, ante.

The record relates to a 21-year-old single male alien, a native and citizen of Colombia, who arrived in the United States on February 16, 1962. He was then in possession of a valid unexpired nonimmigrant visa of the B-2 type (temporary visitor for pleasure). He was admitted in that status and thereafter authorized to remain here therein until October 5, 1962. He has remained here since the expiration of the temporary period of his admission without authority.

The foregoing establishes the respondent's deportability on the above-stated charge, and it is uncontested. This aspect of the case, therefore, requires no further comment.

The special inquiry officer has found the respondent eligible for voluntary departure and granted such relief. The record supports

said official in this respect. Accordingly, no further discussion of this phase of the case is required.

Denial of adjustment of status to this respondent is based on the fact that, although he arrived in the United States in possession of a nonimmigrant visa and was admitted by an immigration officer as a temporary visitor for pleasure, he made the trip to this country aboard a freighter (which ordinarily carries no passengers) by paying a half-fare passage to the Master and working out the other half of his passage by serving meals to the crew and washing dishes after meals. The special inquiry officer's opinion reflects that he did not think that section 245 of the Immigration and Nationality Act was intended to apply in a case such as this. However, he felt constrained to deny the application for adjustment of status thereunder because of the provisions of 8 CFR 245.1. The former provides that:

The status of an alien, *other than an alien crewman,* who was inspected and admitted or paroled into the United States * * * may be adjusted to that of an alien lawfully admitted for permanent residence * * *. (Emphasis supplied.)

The latter states that:

An alien who on arrival in the United States *was serving in any capacity on board a vessel* * * * is not eligible for the benefits of section 245 of the Act * * *. (Emphasis supplied.)

Reduced to its essence, the issue here is whether the exception contained in section 245 applies only to persons who are occupationally crewmen, or includes a person whose only service as a crewman was in connection with the trip which brought him to the United States. In other words, the question to be answered here is whether the Congress intended to hold ineligible for adjustment of status under section 245 an alien who, by happenstance, arrived as a crewman but was properly documented for admission as a nonimmigrant visitor and was so admitted. Our answer to this question is in the negative, for the reasons hereinafter stated.

According to the record, the respondent's high school education was interrupted by a call to military service. He served in the Colombian Navy from about August of 1957 to about May of 1958, but was never on a boat. After his release from military service, the respondent completed his high school education by taking correspondence courses. Then, commencing in about 1959 and continuing for a period of approximately two years, he worked in his father's place of business, selling automobile accessories, helping with the bookkeeping, and performing similar other duties. This was the only employment he had after completing his schooling.

Eventually, he decided to come to the United States for a visit and applied for a visitor's visa at the American Consulate in Bogota, Colombia. He purchased a round-trip airplane ticket between Colombia and the United States, and exhibited same to the American Consul pursuant to the latter's request. The records of said official indicate that the Vice Consul required a letter from the subject's father, a letter from the father's bank, and the round-trip plane ticket before issuing the alien a tourist visa on February 6, 1962.

After the alien received his visa, a female friend connected with a shipping company suggested that he might be able to save money on his passage by going to the United States by boat rather than by plane. Apparently, she thereafter referred him to the captain of the ship on which he arrived in this country. Their meeting resulted in an agreement whereby the respondent paid the Master $100 (alleged to be half-fare, although the ship never had taken passengers) and was to work out the remainder of his passage money by performing duties aboard the ship. They consisted of serving the crewmen during meal and coffee times, and cleaning up afterwards and washing the dishes.

The alien did not sign the articles of the vessel. He did not sleep in the crew's quarters but in the state room normally assigned to the pilot who would come aboard in connection with the entry or clearance of the vessel at any given port. He did not associate with the crew members of the vessel when off duty. He saw no other passengers and indicated that the ship carried none.

He testified that his reason for redeeming his round-trip air ticket and coming by boat in the manner he did was to economize on expenses because he felt he might like to stay in the United States somewhat longer than his father expected and did not want to ask his father for additional money. He also testified that after he had been in this country six months he decided he would like to remain here and was informed by friends that he could apply for adjustment of status to that of a permanent resident.

The manifest of the vessel on which this alien arrived in the United States indicates that he was employed as a workaway. His name was originally listed on the crew list of the vessel as a workaway. However, the manifest further shows that, *pursuant to the action of the inspecting immigration officer,* his name was transferred from the immigration crew list to a separate passenger manifest. He was then admitted for a period of two months as a temporary visitor for pleasure.

The foregoing facts reveal that the respondent had no history of being occupationally a crewman. He obviously was not a stranded

or repatriated individual and concededly had not signed the vessel's articles, so that he was not properly classifiable as a "workaway."[1] He clearly was not hired or accepted as a member of the crew and had no permanent connection with the vessel, so that he was not classifiable as a "seaman."[2] Therefore, he had to be either a business invitee, a visitor or a passenger.[3]

It seems only logical to conclude that the Master handled the case of this alien's passage as he did so that, in the light of the foregoing considerations, neither he (the Master), the vessel, nor the parties responsible for its operation would be subjected to liability under the Jones Act.[4] The inspecting immigration officer also presumably took these same factors into consideration, together with the facts specifically relating to the respondent's passage, in finding the latter a passenger. That being the case, his admission of the respondent, who was in possession of a valid unexpired nonimmigrant visa of the B-2 type (temporary vistor for pleasure), was proper. In our opinion, it was also highly significant since he was the officer in the position to make the best judgment in the matter. Furthermore, his evaluation of the situation was accorded Service approval in the course of the deportation proceedings which were based throughout on the ground that the respondent was a temporary visitor for pleasure who had remained longer.

On the basis of the foregoing factors, the special inquiry officer was of the opinion that the respondent was not the type of alien that Congress intended to exclude from eligibility for adjustment of status under section 245, Immigration and Nationality Act. In forming this opinion, said official gave consideration to a prior precedent decision of this Board wherein, in resolving a somewhat related problem, we explored the Congressional intent in enacting this legislation.[5] We therein expressed the belief that it was the intent of the Congress to bar all aliens who are occupationally crewmen and who entered by reason of their occupation. We pointed out that this result would best meet the problem which faced the Congress— the fact that seamen who have relatively easy access to the United States have used the seaman's route to enter the United States for permanent residence—a problem which has engaged a good deal of the Service energies and which would be aggravated if persons having easy access to the United States were allowed to believe that they

---

[1] *Norris, The Law of Seamen*, Vol. 1, 2d ed., sec. 5.

[2] Id., sec. 4.

[3] Id., sec. 3.

[4] 46 U.S.C. 688, covering hospitalization, damages, penalty, double wages, etc.

[5] *Matter of G——*, A-9948279, 6/4/63; Int. Dec. No. 1285, with citations of legislative history.

could obtain legal residence by deserting and hiding out. We indicated that in the light of this problem, the statute would bar from eligibility for relief any alien who was occupationally a crewman and was brought to the United States as a passenger or workaway on one vessel to reship as a seaman on another. This, of course, would be true because such an alien would be entering this country in pursuit of his calling as a seaman (which is not the situation involved here).

Despite the foregoing, however, the special inquiry officer felt constrained to deny relief to this alien because of the wording of 8 CFR 245.1 which, again provides:

An alien who on arrival in the United States was serving in any capacity on board a vessel * * * is not eligible for the benefits of section 245 of the Act * * *.

We, however, do not agree that the regulation has such a limiting effect.

Section 245, being a remedial statute, is to be liberally construed to suppress the evil and advance the remedy.[6] The regulation, which cannot exceed the scope of the statute on which it depends,[7] must likewise receive liberal construction. And contrary to the old rule which required strict interpretation of exceptions, the existing rule is that exceptions are to be interpreted principally in view of the legislative intent.[8] Accordingly, and in view of the intent of the Congress spelled out in *Matter of G—* ( [5], ante), as well as the following considerations:

      (1) the alien had no background as a seaman:

      (2) he was not classifiable as such under maritime law;

      (3) he did not sign the ship's articles;

      (4) the immigration officer required that he be manifested as a passenger;

      (5) he was in possession of a visitor's visa and was admitted as such; and

      (6) the deportation proceedings against him were conducted on the basis of his being a temporary visitor for pleasure who had remained longer;

it is our conviction that the respondent does not fall within the statutory exception and that he is eligible to have his status adjusted. The special inquiry officer has pointed out in his opinion that he is otherwise eligible.[9]

---

[6] *Sutherland, Statutory Construction*, 3d ed., Vol. 2, sec. 3302.

[7] *United States* v. *Smull*, 236 U.S. 405.

[8] *Sutherland, Statutory Construction*, 3d ed., Vol. 2, 4936.

[9] p. 7, last ¶.

Our strong persuasion to this viewpoint is, we believe, strengthened when we apply the foregoing rules of statutory (and regulatory) construction to 8 CFR 245.1 in its entirety. That is, the phrase therein reading " * * * or was destined to join a vessel or aircraft in the United States to serve in any capacity thereon * * * " is indicative of Congressional intent to have the alien's occupation control rather than the particular manner of his arrival. This, of course, is in keeping with section 101(a)(15)(D) of the Act (8 U.S.C. 1101) which defines as an immigrant every alien except an alien within one of the nonimmigrant classes, to wit:

An alien serving in good faith as such in any capacity required for normal operation and service on board a vessel * * * who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft.

Finally, we do not think it can be seriously contended that our ruling in this case will create an enforcement problem of the nature the Congress was intending to cure. In the first place, mere convenience of enforcement cannot justify a strained construction in the language used.[19] Secondly, our decision will not result in a spate of aliens coming into the United States in the manner this one did, for the same reasons which led the Master of the vessel involved in this case to handle the alien as he did. That is, Masters would be extremely reluctant to subject themselves, their vessel, or the parties responsible for its operation to the possibility of liability under the Jones Act ( 4, ante); and if they did the owners and agents would certainly not tolerate such a practice.

ORDER: It is ordered that the appeal be sustained.

*It is further ordered* that the special inquiry officer's decision be withdrawn.

*It is further ordered* that the respondent's application for adjustment of status to permanent resident under section 245 of the Immigration and Nationality Act be granted.

Allen R. Cozier, Member, Dissenting:

I am unable to agree with the views of the majority of the Board in this case. I reach this conclusion on the strength of the express, unambiguous terms of both the applicable statute and the regulation promulgated thereunder.

The statute (section 245(a), Immigration and Nationality Act) states in clear language: "The status of an alien, *other than an*

---

[19] *United States* v. *J. H. Winchester & Co., Inc.,* 40 F.2d 472.

*alien crewman \* \* \** may be adjusted \* \* \*." (Emphasis supplied.) It is my view that the respondent was a "crewman" during the entire voyage. In the language of the majority the name of this alien was originally placed on the crew list of the vessel, where it remained until after arrival in the United States. It was not until after arrival in the United States that, because of some act of the inspecting immigration officer, the alien's name was taken from the crew list and placed on a passenger list, presumably as an expedient to facilitate his admission as a temporary visitor.

The original placing of the alien's name on the crew list, the assignment to him of the normal duties of a member of the crew and the fact that he was compensated (in kind) for the services performed by him during the voyage, indicate quite clearly that the Master regarded him as a crewman and are strong evidence of his real status as such.

The language of the applicable regulation (8 CFR 245.1) makes it even more certain that respondent is statutorily ineligible for section 245 relief. It states: "An alien who *on arrival* in the United States was serving in any capacity on board a vessel \* \* \* is not eligible for the benefits of section 245 of the Act \* \* \*." (Emphasis supplied.) Nothing is clearer to me than that the alien here was serving in some capacity on board a vessel on arrival in the United States.

**Robert E. Ludwig, Member, Dissenting:**

I disagree with the decision of the majority finding the respondent eligible for relief under section 245 of the Immigration and Nationality Act [8 U.S.C. 1255] and granting relief thereunder. Even were the respondent found to be eligible for relief under the section cited, I would also doubt whether the facts merit such action.

The facts are simple. The pertinent part of the section is clarified by the regulations in Title 8, section 245.1, under eligibility as follows:

245.1 *Eligibility.* An alien who on arrival in the United States was *serving in any capacity on board a vessel* or aircraft, or was destined to join a vessel or aircraft in the United States to serve in any capacity thereon, or was not admitted or paroled following inspection by an immigration officer is not eligible for the benefits of section 245 of the Act . . ." (Emphasis supplied.)

The respondent was employed aboard the vessel. He admits this. He stated that he worked from approximately 7 a.m. until 6 p.m. serving meals, washing dishes, etc., and that he served the crew) (Tr. p. 14) He also stated that by taking this employment the Mas-

ter was able to assign the regular on that job to other tasks, specifically stating at page 12:

Q. In any event, this so-called subordinate assigned you to serving certain naval personnel and other officers of the vessel. Is that so?

A. Well yes. He told me to serve the crew of the ship as there had been another man who was doing this work and they assigned him to do something else and they gave me his work to serve breakfast, lunch and the other meals to the crew.

The respondent stated that he paid $100 plus the work that he did for his passage and that the understanding was that he was to pay approximately half of his passage. Since the voyage from Colombia to the United States was only six or seven days, payment of $100 in United States currency for this amount of work was substantial and in all probability equalled if not exceeded the normal rate of pay.

This is not the case of a Captain who out of sympathy or generosity assisted an alien wishing to come to the United States. It was a legitimate full-time employment at substantial wages, relieving a regular member of the crew who was thereby able to take another assignment. It may be true that the respondent was only interested in passage to the United States. However, from the standpoint of the Captain there was no question but that he was a regular member of the crew and he was so manifested at the time he was employed in Colombia. It is true that the immigrant inspector upon arrival concluded that he was improperly manifested as a member of the crew, but this does not change the basic thought in the Captain's mind at the time he employed the respondent.

It may be true as stated by the majority decision that Congress did not intend to preclude workaways from the benefit of the provisions of section 245, *supra*. However, the regulation which has the full force of law definitely and unequivocally states otherwise: It may be that it is a bad regulation. However, if this be true the way to remedy it is by amendment under the regular procedure provided therefor and not by erroneous interpretation. Many persons applying for admission to the United States for permanent residence arrive as workaways. It is a large group and this *is not* an isolated case not likely to occur again. If the interpretation given by the majority is to be the guide for the future it should be made so by an amendment to the regulations, so stating.

Even were the respondent to be found eligible for section 245 relief, I seriously doubt whether he should be given the benefit thereof. He is single, has no ties in the United States and came here for a few days as a temporary visitor. He is a nonimmigrant alien and in my opinion should be required to comply with the law and secure a nonquota immigration visa in his native country.