Louis GENA, Petitioner,

v.

IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.

No. 27356.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1970.

Rehearing Denied March 23, 1970.

Henry Klepak, Dallas, Tex., for petitioner.

John N. Mitchell, Atty. Gen. of U. S., George W. Masterton, Jr., Atty., Crim. Div., U. S. Dept. of Justice, Washington, D. C., Claude D. Brown, Asst. U. S. Atty., Eldon B. Mahon, U. S. Atty., Northern District of Texas, Fort Worth, Tex., for respondent; Paul C. Summitt, Atty., Dept. of Justice, Washington D. C., of counsel.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge.

We consider here an appeal arising out of deportation proceedings against one Louis Gena, a citizen of the Republic of Haiti. Gena originally entered the United States on August 18, 1966, as an alien in transit with authorization to remain in this country for only one day. Despite the nature of his original entry, Gena has remained in the United States until now. Having prolonged his presence in this country from a one-day stand to more than three years of residence, he now seeks further protraction which we cannot grant.

## I.

The record shows that Gena is a 37-year-old native of Haiti. His wife and four children still reside in Haiti in the family home which Gena owns. He has three brothers and two sisters, all of whom are living in Haiti. Gena engaged in various occupations while living in Haiti. He worked as a carpenter's apprentice for three years and as an electrician for eight. He also worked in a hospital until early March of 1966 and thereafter had his own truck garden.

In April of 1966 Gena left Haiti and went to Guadeloupe, using an exit visa which he had previously obtained. He testified [1] that he left Haiti at that time because his wife "had trouble with the Ton Ton Macoute," the Haitian semi-official secret police. He explained that "the assistant chief of the Ton Ton Macoute spoke to my wife and proposi-

---

1. The testimony referred to herein was given at Gena's deportation hearing, which was held in San Juan, Puerto Rico, on November 15, 1966, and January 17, 1967.

tioned her, wanted her as his woman." Gena also testified that the assistant chief fought with him. After that one incident, however, the assistant chief of the Ton Ton Macoute never came back. Gena's wife was not bothered while Gena was in Guadeloupe.

On June 3, 1966, Gena returned to Haiti because he thought things had quieted down. When he had been home four days, however, a friend warned him that he was to be arrested. He therefore left his home and went to Port-au-Prince, where he made preparations to leave the country again. He apparently remained in semi-seclusion in Port-au-Prince. He did, however, go to government offices to apply for a permit to leave Haiti. He testified that he was able to obtain an exit visa without difficulty through the influence of his father's friends. Gena also went to a police office to obtain a required stamp. He testified that he could go to the police without fear of arrest because he was wanted only by the Ton Ton Macoute, which he described as an unofficial organization.

Gena left Haiti a second time on June 22, 1966, and again went to Guadeloupe. In July of 1966 he received a letter from his wife telling him not to return to Haiti. He then went to Martinique, where he applied for a visa to come to the United States.

Using the visa which he obtained in Martinique, Gena entered the United States at Charlotte Amalie in the Virgin Islands on August 18, 1966. He was admitted as a nonimmigrant visitor in transit through the United States, authorized to remain in this country only until the following day, August 19. He remained past that date, however, with no apparent intention to depart.

The Immigration and Naturalization Service instituted deportation proceedings against Gena on October 21, 1966.

A hearing was held on November 15, 1966, and January 17, 1967, at San Juan, Puerto Rico. At both sessions of the hearing the special inquiry officer advised Gena of his right to representation by counsel, but Gena elected to proceed without representation.

Gena admitted at the first session of the deportation hearing that he was deportable because he was illegally in this country. He indicated, however, that he was afraid to return to Haiti. The hearing was therefore adjourned to afford him an opportunity to apply for withholding of deportation to Haiti pursuant to § 243(h) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253(h), which authorizes a stay of deportation if the Attorney General is of the opinion that the alien would be subject to persecution in the country of deportation "on account of race, religion, or political opinion." [2]

At the continuation of the hearing on January 17, 1967, Gena admitted that he had never been arrested while he was living in Haiti and that he had never been a member of any organization there. He also testified that his wife had not experienced any trouble in Haiti after his departure. Moreover, he admitted that the only difficulties he had ever encountered had been the fight over his wife and his friend's warning that he might be arrested.

On November 6, 1967, the special inquiry officer who had conducted the hearing issued a decision denying Gena's application for § 243(h) relief and ordering him deported to Haiti under § 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a)(2), for remaining in this country past his authorized time of one day. The special inquiry officer explained his denial of § 243(h) relief as follows:

"To be eligible for that relief respondent must establish that he will

2. Section 243(h) reads as follows:
   The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.

be persecuted or fears persecution because of race, religion, or political opinion. He does not fear persecution because of race or religion, and insofar as political opinion is concerned while the respondent states that he is fearful of what may happen to him by an official or officials of the Ton Ton Macoute the so-called private or secret police of President Duvalier it does not appear that this is because of respondent's political opinions.

"In fact the gist of the respondent's testimony is that he really fears only the action of one person in the Ton Ton Macoute [who] apparently became enamoured of the respondent's wife and sought to take advantage of his position to harass or incarcerate respondent. However since the respondent left Haiti it does not appear that this particular person has any interest any longer in respondent's wife and under the circumstances I find he has failed to establish that he would suffer or has reasonable ground to believe he would suffer persecution on any of the three reasons specified in the statute."

On November 20, 1967, Gena filed, through an attorney in Puerto Rico, a notice of appeal to the Board of Immigration Appeals. In this notice the following reason for Gena's appeal was given:

"Respondent's sole grounds for appeal is based upon his desire to withhold deportation to Haiti because of a genuine fear of life or bodily harm due to persecution of a political nature. Respondent's affidavit in which details and facts of said persecution are given is being prepared to be submitted in support of this appeal."

The promised affidavit, however, never materialized. Consequently, on January 5, 1968, the Board, noting that the affidavit had not been submitted, dismissed the appeal without prejudice.

On February 26, 1968, Gena filed a motion for reconsideration of the Board's order, supporting his motion with an affidavit. In the affidavit Gena stated that he had been collecting papers and documents in preparation for an application at an American consulate for an immigrant visa and that he was awaiting labor certification for prospective employment in Puerto Rico. He requested voluntary departure in lieu of deportation to facilitate an application for permanent residence. With respect to his application for withholding deportation to Haiti, he stated for the first time that his political beliefs "are opposed to the present government in Haiti," and that his departure from Haiti was motivated by the fear that his political opposition to the regime of Haitian President Duvalier would cause harm to his family or himself. In addition, for the first time he ascribed political significance to the fight with the assistant chief of the Ton Ton Macoute:

"In March, 1966, *because of my political beliefs,* I had a fight with Gerard Pierre, one of the chiefs of the Tonton Macoute, the dreaded secret police of Haiti, who also tried to rape and enamor my wife and make her his woman." (Emphasis added.)

On March 25, 1968, the Board, treating Gena's motion as a motion to reopen the deportation proceedings, entered an order withdrawing the outstanding order of deportation, granting Gena's application for voluntary departure in lieu of deportation, and providing that the deportation order would be automatically reinstated if Gena should fail to depart. The Board specifically affirmed the decision of the special inquiry officer denying Gena's application for § 243(h) relief.

On October 22, 1968, after Gena had failed to depart and had been ordered to report for deportation, his present counsel submitted to the Board a motion which was designated a motion to reconsider and stay the deportation order. This motion indicated initially that it was an "appeal" from the denial of Gena's application for § 243(h) relief. It next indicated that Gena, if afforded reasonable time to do so, was then in a position to obtain testimony or affida-

vits of witnesses to corroborate his own testimony and affidavit. Finally, the motion sought a stay of deportation pending introduction of a private bill in the next session of Congress.

In answer to the opposition to his motion filed by the Immigration and Naturalization Service, Gena stated that he would need sixty days to obtain affidavits supporting his motion from Haitians then residing in Puerto Rico.

On January 29, 1969, the Board, treating this motion as a motion to reopen the deportation proceedings for the submission of additional evidence, denied the motion. The Board's denial was based primarily upon the fact that more than sixty days had elapsed following Gena's answer to the Service's motion and no affidavits had been forthcoming. The Board also noted that it had previously given full consideration to Gena's application for § 243(h) relief.

Gena filed a petition for review on February 20, 1969. By this petition for review he brings himself within the jurisdiction of this court. 8 U.S.C.A. § 1105a.

## II.

■ We note at the outset that our consideration of Gena's appeal is limited to review of the Board's order of January 29, 1969, denying his motion to reopen the deportation proceedings for the submission of additional evidence. Gena apparently disagrees; his brief to this court is based in part on the assumption that we can review the Board's order of March 25, 1968, which affirmed the special inquiry officer's denial of § 243(h) relief. It is true that this court is empowered to review both final deportation orders, 8 U.S.C.A. § 1105a, and motions to reopen, Giova v. Rosenberg, 1964, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90; Luna-Benalcazar v. Immigration and Naturalization Service, 6 Cir. 1969, 414 F.2d 254, 256; Velasquez Espinosa v. Immigration and Naturalization Service, 9 Cir. 1968, 404 F.2d 544; Cheng Kai Fu v. Immigration and Naturalization Service, 2 Cir. 1967, 386 F.2d 750, cert. denied, 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104; Novinc v. Immigration and Naturalization Service, 7 Cir. 1967, 371 F.2d 272; Toon-Ming Wong v. Immigration and Naturalization Service, 9 Cir. 1966, 363 F.2d 234, 235; Chul Hi Kim v. Immigration and Naturalization Service, 7 Cir. 1966, 357 F.2d 904; Lopez v. Immigration and Naturalization Service, 3 Cir. 1966, 356 F.2d 986, cert. denied, 385 U.S. 839, 87 S.Ct. 88, 17 L.Ed.2d 73; Schieber v. Immigration and Naturalization Service, 9 Cir. 1965, 347 F.2d 353, 354. There is a time limit, however, applicable to our review: A petition for review must be filed within six months of the date of the order to be reviewed. 8 U.S.C.A. § 1105a(a) (1); Loza-Bedoya v. Immigration and Naturalization Service, 9 Cir. 1969, 410 F.2d 343; Velasquez Espinosa v. Immigration and Naturalization Service, *supra*; Toon-Ming Wong v. Immigration and Naturalization Service, *supra*; Chul Hi Kim v. Immigration and Naturalization Service, *supra*; Lopez v. Immigration and Naturalization Service, *supra*; *cf.* Woodby v. Immigration and Naturalization Service, 1966, 385 U.S. 276, 286 n. 20, 87 S.Ct. 483, 17 L.Ed.2d 362; Yamada v. Immigration and Naturalization Service, 9 Cir. 1967, 384 F.2d 214, 215 n. 3; Bregman v. Immigration and Naturalization Service, 9 Cir. 1965, 351 F.2d 401, 402–403.

■ The decision of the special inquiry officer denying Gena's application for § 243(h) relief was issued on November 6, 1967. The Board's order affirming that decision was entered on March 25, 1968. In the six months following the Board's order Gena took no action to challenge that order. He thereby forfeited his right to review of that order in this court.

On October 22, 1968, Gena filed his motion to reopen. The Board's order denying this motion was entered on January 29, 1969. This order is properly reviewable in this court because Gena acted well before the passage of six

months; he filed his petition for review on February 20, 1969.

■ Review of a denial of a motion to reopen, however, is limited to the determination of whether the denial of the motion was an abuse of discretion. Loza-Bedoya v. Immigration and Naturalization Service, *supra*; Velasquez Espinosa v. Immigration and Naturalization Service, *supra*; Cheng Kai Fu v. Immigration and Naturalization Service, *supra*; Novinc v. Immigration and Naturalization Service, *supra*. Thus the narrow question presented to this court by Gena's petition for review is whether the Board abused its discretion in denying Gena's motion to reopen the deportation proceedings for the submission of additional evidence. For the reasons hereinafter given, we conclude that there was no abuse of discretion.

The Attorney General's regulations governing motions to the Board to reopen or reconsider an immigration matter provide in part that a motion to reopen "shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 3.8(a). Gena's motion to reopen, which was filed on October 22, 1968, did not set forth any new facts or any new evidence. In pertinent part it merely requested that the Board grant Gena additional time "to procure additional proof from other refugees who have escaped from Haiti and have knowledge of the threat that hangs over the head of this respondent should he be forced to return to Haiti." The motion also contained the allegation that Gena had not been in a position to obtain such evidence earlier, but that he would be able to obtain such evidence if given a reasonable period of time to do so. On the basis of these representations the Board granted Gena a stay of deportation to permit the filing of further documents.

The trial attorney for the Immigration and Naturalization Service filed a memorandum in opposition to Gena's motion to reopen on November 8, 1968. In his answer to this memorandum, filed November 18, 1968, Gena stated that he needed sixty days to secure and file the affidavits which he proposed to obtain from Haitian refugees in Puerto Rico. During the subsequent sixty days, however, not a single affidavit was submitted to the Board on Gena's behalf. Having received no communication from Gena after November 18, 1968, the Board entered its order denying his motion to reopen on January 29, 1969.

■ In the light of Gena's failure to file new evidence of any kind, we certainly cannot say that the Board's denial of his motion to reopen constituted an abuse of discretion. By the terms of his own definition of a reasonable time, i. e., sixty days, he had then had more than ample time to obtain and submit to the Board affidavits or other evidence. His continued failure to do so could only lead the Board to conclude that he did not have any new evidence at his disposal and that to reopen the deportation proceedings for the submission of additional evidence would be pointless.

Indeed, at the time the Board issued its order on January 29, Gena had had more than two years to submit evidence in support of his application for § 243(h) relief. Section 243(h) requires a showing that the alien seeking relief is likely to be persecuted in the country of deportation "on account of race, religion, or political opinion." See Kovac v. Immigration and Naturalization Service, 9 Cir. 1969, 407 F.2d 102; Hosseinmardi v. Immigration and Naturalization Service, 9 Cir. 1968, 405 F.2d 25; Cheng Fu Sheng v. Immigration and Naturalization Service, 9 Cir. 1968, 400 F.2d 678, cert. denied, 393 U.S. 1054, 89 S.Ct. 690, 21 L.Ed.2d 696; Asghari v. Immigration and Naturalization Service, 9 Cir. 1968, 396 F.2d 391; Cheng Kai Fu v. Immigration and Naturalization Service, 2 Cir. 1967, 386 F.2d 750, cert. denied, 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104; Lena v. Immigration and Naturalization Service, 7 Cir. 1967, 379 F.2d 536.

Gena never contended that he would be persecuted in Haiti for racial or reli-

gious reasons; his sole contention was that he would be subjected to persecution by reason of his political opinion. This contention, however, was never supported by any evidence other than his own bare conclusory statement that his political views were opposed to the Duvalier regime. Moreover, the evidence in the record before the Board belied this statement. Gena appears to have lived in moderate circumstances in Haiti and to have had ordinary employment. He testified that he was never arrested in Haiti and that he never belonged to any organization there. There was no evidence to the effect that Gena, any member of his family, or any relative ever had any political affiliation or activity in Haiti or ever opposed the Duvalier regime. After his departure from Haiti his wife, children, brothers, and sisters continued to live there. The only specific event mentioned in Gena's testimony was his fight with Gerard Pierre, the official of the Ton Ton Macoute who apparently coveted his wife. The record provided no substantial basis for concluding that Gena feared Haitian reprisals either as a result of political activities or as a result of Pierre's amatory dalliance with Gena's wife. Nor was there any reason for the Board to reopen Gena's deportation proceedings in the hope that he would some day manage to produce some evidence in support of his application for § 243(h) relief.

As our exhaustive review of the proceedings in this case clearly demonstrates, Louis Gena has received a full measure of consideration from the Immigration and Naturalization Service. Moreover, the specific order now before us—the order of the Board of Immigration Appeals denying Gena's motion to reopen—could not by any stretch of the imagination be termed an abuse of the Board's discretion. Although an abundance of administrative patience has prolonged petitioner's presence in this country, the time has come to write finis to these proceedings.

The order of the Board is affirmed and the petition for review is dismissed.