**TE KUEI LIU, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 80–1429.**

United States Court of Appeals, Fifth Circuit. Unit A

May 15, 1981.

---

Harry Gee, Jr., Adan G. Vega, Mark H. Onak, Houston, Tex., for petitioner,

Eric Fisher, Dept. of Justice, Washington, D. C., for respondent.

Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges.

INGRAHAM, Circuit Judge:

Te Kuei Liu petitions this court to reverse the Board of Immigration Appeals and order the reopening of his deportation proceedings. For the reasons developed below, we affirm the Board.

## I.

Te Kuei Liu is a native of China and a citizen of Taiwan. He entered the United States on March 11, 1973, as a nonimmigrant crewman, with authority to remain no longer than twenty-nine days. *See generally* 8 U.S.C. § 1282(a)(1) (1976). When his vessel departed on March 23, 1973, Liu was not aboard.

In October 1976 the Immigration and Naturalization Service (INS) ordered Liu to show cause why he should not be deported pursuant to section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1976). Following a hearing in December 1976, at which Liu through counsel admitted his deportability under that section of the statute, an immigration judge found Liu deportable as charged and granted him the privilege until January 1977 of voluntary departure in lieu of deportation.

Notwithstanding his concession as to deportability, Liu appealed the decision of the

immigration judge to the Board of Immigration Appeals (BIA). *See generally* 8 C.F.R. § 3.1(b)(2) (1976). Liu contended that inasmuch as the INS had "unjustifiably refused to act" upon an immediate relative visa petition filed on his behalf,[1] the immigration judge should have corrected that injury by granting Liu a "conditional termination of [the deportation] proceedings." Liu did not point to nor could the BIA find any provision in the immigration statutes or in the pertinent regulations that would authorize an immigration judge to adjudicate a visa petition or to grant extended voluntary departure, the closest analogue to the "conditional termination of proceedings" sought by Liu. Accordingly, in April 1978 the BIA dismissed Liu's appeal by written order and reinstated the privilege of voluntary departure for an additional thirty days. Liu did not take an appeal to this court from that adverse decision.

## II.

Along a second procedural route, albeit with considerable chronological overlap, Liu employed other means in his quest to remain in this country. In May 1975 he married Peggy Joyce Mitchell, a citizen of the United States. In October of that year, after some delay in acquiring divorce certificates from her three or four previous marriages, Mrs. Liu filed an immediate relative visa petition (Form I–130) on behalf of her new husband, Te Kuei Liu. *See generally* 8 U.S.C. §§ 1151(b), 1154, 1204 (1976); 8 C.F.R. § 204.1(a) (1975).

In September 1976, an interview was conducted by the INS with Liu and his wife. The adjudicator determined that the petitioner could speak little or no Chinese and the beneficiary could speak little or no English. An investigation was therefore ordered into the bona fides of Liu's marriage. An INS criminal investigator subsequently questioned Mrs. Liu, who was residing in Houston, Texas, and determined that Mr. Liu was living in Galveston, Texas, for the stated purpose of being closer to his work. Record memoranda also indicate some discussion of the possibility that Liu was using petitioner to gain residency in the United States, but that Mrs. Liu was unwilling to withdraw her petition because she needed his financial support.

A second formal interview of Mr. and Mrs. Liu was conducted by the INS in March 1977. Following that hearing, Mrs. Liu's Form I–130 visa petition was approved by the District Director in Houston. Since her husband had entered the United States as a crewman, however, his status could not be adjusted in this country. *See* 8 U.S.C. § 1255(a) (1976). Accordingly, the District Director forwarded the approved immediate relative visa petition to the American Consul in Winnipeg, Manitoba, Canada, for issuance of an immigrant visa. Because of questions concerning the bona fides of Liu's marriage, however, the Consul returned the visa petition to the INS District Director for further investigation.

Prior to June 1978, an INS criminal investigator spoke with Mrs. Liu by telephone on more than one occasion. Although Mrs. Liu did not appear for her scheduled interview on June 1, 1978, an investigative memorandum written on that date discusses the substance of previous telephone conversations between Mrs. Liu and the INS criminal investigator. It appeared to the investigator that Mrs. Liu did not consider herself the wife of Liu in the sense of traditional marital intimacy and had been unaware of his whereabouts for some time, but that she nevertheless desired to pursue further the immediate relative visa petition because she needed the money he provided for her rent. There was also the strong indication that Mrs. Liu believed that, were she to disclose everything concerning her marriage to Liu, she could get certain people in serious trouble. Other record memoranda indicate that Mrs. Liu admitted to a drinking problem.

---

1. This argument, although raised by Liu in the context of his deportation proceedings, actually arises out of his dissatisfaction with the INS handling of his wife's visa petition proceedings, discussed in Part II, *infra.*

In October 1978, Mr. and Mrs. Liu were formally interviewed by the INS for the third time. Shortly after the hearing, Mrs. Liu's immediate relative visa petition was again approved and forwarded to the American Consul in Winnipeg. Accompanying the approved Form I–130 was a memorandum indicating that the reinterview of petitioner and beneficiary yielded negative results with respect to a possible revocation or withdrawal of the petition. The memorandum further indicated that Mr. and Mrs. Liu were then living together as man and wife and apparently intended to continue doing so, at least so long as the petition was pending.

While the petition was awaiting action by the American Consul in Winnipeg, Mrs. Liu died in April 1979. Her death certificate lists the cause of death as cirrhosis of the liver.[2] Mrs. Liu's death triggered the automatic revocation mechanism of 8 U.S.C. § 1155 (1976) and 8 C.F.R. § 205.1(a)(2) (1979), and the District Director advised Liu that his wife's petition was being withdrawn. In May 1979, Liu's attorney requested of the District Director, pursuant to 8 C.F.R. § 205.1(a)(3) (1979), that the automatic revocation be withdrawn on humanitarian grounds. In July 1979, the District Director informed Liu that he did not find the automatic revocation inappropriate. Liu's attorney attempted to appeal this decision to the Regional Commissioner of the INS but by letter in October 1979, the commissioner rejected the appeal on the ground that proper jurisdiction lay in the BIA. *See generally* 8 C.F.R. § 3.1(b)(5) (1979). The commissioner suggested that the appeal be taken to the proper body, citing the appropriate code provisions for doing so. No such appeal, however, was taken.

In December 1979, the INS issued Liu a notice to report for deportation. In January 1980, Liu filed with the District Director an application for stay of deportation. One week after that filing, the District Director denied Liu's application for stay. In February 1980, Liu filed with the BIA a motion to reopen his deportation proceedings. On April 11, 1980, the BIA denied Liu's motion to reopen, holding that it had no jurisdiction to rule on the correctness of a visa petition revocation in the context of Liu's deportation proceedings. On April 18, 1980, Liu filed with this court a petition for review of the BIA's refusal to reopen his deportation proceedings.

### III.

We hold at the outset that the only matter properly before this court is the refusal by the BIA to reopen Liu's *deportation proceedings* for the submission of additional evidence. Liu apparently would disagree with this holding. In his brief and at oral argument, his counsel argued the merits of the INS' allegedly unjustifiable delay in handling his wife's *visa petition proceedings*, and the effect of that delay on his equitable entitlement to a "conditional termination" of his deportation proceedings. For reasons to be developed hereinafter, we cannot pass on the merits of that argument in this petition for review.

This court has authority to review both final deportation orders, 8 U.S.C. § 1105a(a) (1976), and denials of motions to reopen deportation proceedings, *see, e. g., Gena v. INS,* 424 F.2d 227 (5th Cir. 1970). There is, however, a time limit applicable to our power of review. A petition for review must be filed within six months of the date of the entry of the order to be reviewed. 8 U.S.C. § 1105a(a)(1) (1976); *Gena v. INS,* 424 F.2d at 231 (and cases cited therein).

The decision of the immigration judge finding Liu deportable as charged and denying him a conditional termination of deportation proceedings pending the termination of his wife's visa petition proceedings was rendered in December 1976. The affirmance of that decision by the BIA, both as to deportability and as to the refusal to conditionally terminate the deporta-

---

2. The certificate lists the decedent's last name as "Mitchell." The names of decedent's father and mother are listed "unknown." The person providing the personal information was Te Kuei Liu.

tion proceedings, was rendered in April 1978. In the six months following the BIA's decision, Liu made no effort to appeal that decision to this court. He therefore forfeited his right to have us review that decision. *See Aguilar v. INS*, 638 F.2d 717, 718 n.1 (5th Cir. 1981); *Gena v. INS*, 424 F.2d at 231.

■ Even if this were a timely appeal from the BIA's affirmance of Liu's final deportation order, we could not now pass on Liu's arguments concerning the INS' handling of his wife's visa petition and any resulting equitable entitlement to a "conditional termination" of his deportation proceedings. Following his wife's death and the subsequent automatic revocation of her visa petition, Liu requested the District Director to suspend or withdraw that automatic revocation on humanitarian grounds, pursuant to 8 C.F.R. § 205.1(a)(3). In July 1979, the District Director held that Liu did not merit that favorable exercise of discretion. When Liu attempted to appeal that decision to the INS Regional Commissioner, he was informed that jurisdiction over the matter lay with the BIA. The commissioner invited Liu to appeal to that body, but no appeal was taken.

Even after time to take such an appeal had run, Liu still could have moved the District Director in the visa petition proceedings to reconsider his automatic revocation decision, a motion against which no statutory time limitation operates.[3] Even had the District Director denied a motion to reconsider his automatic revocation affirmation, Liu still could have appealed that denial to the BIA. *See* 8 C.F.R. § 3.1(b)(5) (1979). On such an appeal, the BIA properly could have considered Liu's request under 8 C.F.R. § 205.1(a)(3) (1979).

If the BIA had ruled adversely to Liu, he still could have sought declaratory review in the appropriate United States District Court of the issues regarding what status, if any, Liu held as a result of a twice-approved visa petition and of the later administrative revocation of that approved petition. *See generally Cheng Fan Kwok v. INS*, 392 U.S. 206, 209–10, 88 S.Ct. 1970, 1972–73, 20 L.Ed.2d 1037 (1968); *Navarro v. INS*, 574 F.2d 379, 383 (7th Cir.), *cert. denied*, 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978). Thus, Liu had both administrative and judicial remedies yet to exhaust concerning his arguments over the INS' handling of his wife's immediate relative visa petition. We therefore will not pass on those arguments here.

## IV.

■ We turn finally to the matter that is properly before this court—Liu's timely petition for review of the BIA's denial of his motion to reopen the deportation proceedings for the submission and consideration of new evidence. Our task in passing on such a petition for review generally is to determine whether that denial by the BIA was an abuse of its discretion. *Vasquez-Contreras v. INS*, 582 F.2d 334, 335 (5th Cir. 1978); *Faddah v. INS*, 553 F.2d 491, 492 n.1 (5th Cir. 1977); *Gena v. INS*, 424 F.2d 227, 232 (5th Cir. 1970). Where the denial rests on a conclusion that the alien is statutorily ineligible for the relief he seeks, however, the BIA's decision is also subject to review for errors of law. *See Ka Fung Chan v. INS*, 634 F.2d 248, 252 (5th Cir. 1981). For reasons explained hereinafter, we conclude that there was neither abuse of discretion nor error of law.

The BIA conducts its affairs, including consideration of a motion to reopen deportation proceedings, according to rules of adjudication promulgated pursuant to its congressionally delegated authority. The relevant rule here provides as follows:

> Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . .

---

3. The BIA, in its April 1980 denial of Liu's motion to reopen his deportation proceedings, actually invited Liu to pursue this avenue of possible relief.

8 C.F.R. § 3.2 (1980). Thus, the information must be both new, within the sense of the regulation, *and* material.

The "new and changed circumstances" asserted by Liu in his motion to reopen were as follows: the INS conducted yet a third interview of Mr. and Mrs. Liu concerning the latter's immediate relative visa petition; after approval of that petition by the District Director, the American Consul failed to act on the visa petition prior to the death of Mrs. Liu; and subsequent to the petitioner's death, the District Director revoked the visa petition pursuant to 8 C.F.R. § 205.1(a)(2) (1979). While these "new and changed circumstances" might constitute new evidence within the sense of 8 C.F.R. § 3.2 (1980)—*i. e.,* "evidence [that] was not available and could not have been discovered or presented at the former hearing"— they simply are not circumstances that are *material* to any issues cognizable in the context of Liu's deportation proceedings.[4]

Liu entered this country in 1973 as a nonimmigrant crewman. When he was ordered to show cause why he should not be deported, Liu through counsel admitted his deportability. The BIA upheld the final deportation order entered by the immigration judge. In his brief to this court, Liu asked us to order the BIA to reopen his deportation proceedings so that he can prove either of two contentions: (1) that he is entitled to the benefit of his deceased wife's immediate relative visa petition and therefore is eligible for adjustment of sta-

tus to that of an alien lawfully admitted for permanent residence pursuant to 8 U.S.C. § 1255 (1976); or (2) that he is eligible for suspension of deportation and adjustment of status on humanitarian grounds pursuant to 8 U.S.C. § 1254 (1976).

The fatal flaw in each of these contentions is that Liu is *not* eligible for relief under either section 1254 or section 1255. By act of Congress, these provisions for equitable relief are not available to aliens who enter this country as crewmen. *See* 8 U.S.C. §§ 1254(f), 1255(a) (1976). Any evidence Liu could offer in support of an adjustment of status under either section would not change the immutable fact that he entered the United States as an alien crewman and therefore is not entitled to remain in this country while he awaits an adjustment of status, assuming he is eligible for such adjustment.[5] Thus, Liu's asserted "new and changed circumstances" are not material to the question of his deportability under 8 U.S.C. § 1251(a)(2) (1976).

What Liu really seeks is a determination that the automatic revocation provisions of 8 U.S.C. § 1155 (1976) and 8 C.F.R. § 205.1(a)(2) (1979) should not be applied to him because of alleged undue delay in the issuance of his deceased wife's immediate relative visa petition. The present petition for review, however, is before us pursuant to 8 U.S.C. § 1105a(a), providing for review in the courts of appeals of orders of depor-

---

4. In its precise common law meaning, the term "materiality" looks to the relationship between the propositions for which evidence is offered and the issues present in the case. "If the evidence is offered to prove a proposition which is not a matter in issue or probative of a matter in issue, the evidence is properly said to be immaterial." McCORMICK, EVIDENCE § 185, at 434 (2d ed.1972). Without engaging in pedagogical discourse on the precise meaning of the term under the Federal Rules of Evidence, *see generally id.* n.4 (Supp.1978), or even whether the distinction is meaningful here, it is sufficient to hold that Liu's proffered evidence falls within the immateriality ban of 8 C.F.R. § 3.2 (1980).

5. Counsel for Liu appeared to concede this point at oral argument:

Throughout the brief we mention "suspension of deportation" and this phrase is used repeatedly in the brief. However, Mr. Liu was a crewman and is not entitled to suspension of deportation on that basis. We therefore are not requesting for [sic] that type of relief even though Mr. Liu has been here in this country for seven years and is of good moral character and has suffered or will suffer extreme hardship if deported. Secondly, we use the term "adjustment of status" in the brief and this may have been used in a confusing manner and I would like to clarify that at this time. We understand that this alien does not qualify to adjust his status in the States. He can upon reinstatement of the visa petition obtain his immigrant visa with the U. S. Consul abroad.

tation. We do not read that section as conferring upon us jurisdiction to directly review the refusal of the District Director to suspend or reverse the automatic revocation of Mrs. Liu's visa petition, over which the immigration judge and the BIA in this deportation proceeding had no jurisdiction. *See also Carino v. INS*, 460 F.2d 1341, 1344 (7th Cir. 1972). Nor is it within the ambit of our review to consider the actions of the American Consul in Winnipeg, Manitoba, Canada. *See Gonzalez-Cuevas v. INS*, 515 F.2d 1222, 1224 (5th Cir. 1975). *See generally Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179 (2d Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978).

It is only by acts of Congress that our court acquires jurisdiction to hear one case or another on appeal. While it is indeed unfortunate that Mrs. Liu passed away pending the outcome of her immediate relative visa petition, that was an act of God, not of Congress, and as such does not empower us to entertain or grant the novel request for relief presented here by Te Kuei Liu.

Accordingly, the order of the BIA is AFFIRMED.