# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30165

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2018

Lyle W. Cayce
Clerk

ELDEN GUERRERO,

>      Plaintiff - Appellee

v.

KIRSTJEN M. NIELSEN, SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY, Secretary, Department of Homeland Security;
CINDY GOMEZ, District Director, United States Citizenship and
Immigration Services,

>      Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-1135

Before HIGGINBOTHAM and HIGGINSON, Circuit Judges.*

STEPHEN A. HIGGINSON, Circuit Judge:**

This case concerns the interplay of two immigration statutes. The first

---

\* Judge Edward C. Prado, a member of our original panel, retired from the court on April 2, 2018, to become His Excellency the United States Ambassador to the Argentine Republic. He therefore did not participate in this matter, which is decided by a quorum. *See* 28 U.S.C. § 46(d).

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30165

statute, 8 U.S.C. § 1255(a), creates a mechanism by which certain nonpermanent residents (or, in the statutory parlance, "nonimmigrants") can obtain permanent lawful status. But by the statute's plain terms, this mechanism "shall not be applicable to an alien crewman." § 1255(c)(1). The second statute, 8 U.S.C. § 1254a, authorizes the Secretary of Homeland Security to grant "temporary protected status" (TPS) to nationals of countries afflicted with humanitarian crises. And it says that "for purposes of adjustment of status under section 1255," any TPS-holder "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." § 1254a(f)(4).

The question is how these provisions apply to plaintiff Elden Guerrero. Guerrero entered the country lawfully on a short-term nonimmigrant visa intended for alien crewmen. He then overstayed that visa and received TPS. He now seeks to become a lawful permanent resident via § 1255(a). We must decide: Is Guerrero "an alien crewman" within the meaning of § 1255(c)(1)? And if he is, does his TPS override § 1255(c)(1)'s express alien-crewman bar?

We hold that § 1255(c)(1) renders Guerrero statutorily ineligible to adjust his status under § 1255(a). We first construe § 1255(c)(1) and hold that, based on the undisputed law and facts, Guerrero is "an alien crewman" within that statute's meaning. We then construe § 1254a(f)(4) and hold that it does nothing to obviate § 1255(c)(1)'s clear, categorical command: § 1255(a) "shall not be applicable to an alien crewman." To be sure, Guerrero's TPS effectively restores him to the status he enjoyed before he overstayed his visa (i.e., it gives him "lawful status as a nonimmigrant"). But it cannot change the historical fact that he last entered the country as an alien crewman, bringing him within § 1255(c)(1)'s ambit and excluding him from § 1255(a). Guerrero's § 1255(a) application was properly denied. The district court's contrary holding is reversed, and judgment is rendered in favor of the government.

2

No. 16-30165

I

A

Federal immigration law refers to persons who are neither U.S. citizens nor U.S. nationals as "aliens." 8 U.S.C. § 1101(a)(3). It further divides aliens into "immigrants" and "nonimmigrants." § 1101(a)(15). "Nonimmigrants" are aliens admitted to the United States for the limited times and purposes listed in 8 U.S.C. § 1101(a)(15). To take a common example: an "H-1B" nonimmigrant is someone temporarily admitted to work in a specialty occupation. *See* § 1101(a)(15)(H)(i)(b). More relevant here, a "C-1" nonimmigrant is "an alien in immediate and continuous transit through the United States," § 1101(a)(15)(C), and a "D" nonimmigrant is

> an alien crewman serving in good faith as such in a capacity required for normal operation and service on board a vessel . . . or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft . . . .

§ 1101(a)(15)(D). Aliens outside the enumerated nonimmigrant categories, on the other hand, are considered simply "immigrants." § 1101(a)(15). "Essentially, an immigrant is a person intending to remain in the United States on a permanent basis." Richard D. Steel, *Steel on Immigration Law* § 2:23 (2d ed. updated Oct. 2017). And when the law permits an immigrant legally to do so, that person is a "lawful permanent resident." *See* § 1101(a)(20).

Nonimmigrants seeking permanent lawful status generally have two options. One option is the route available even to persons with no connection to the country: "apply for an immigrant visa at a United States Consul outside of the United States." Steel, *supra*, § 4.8. But Congress has also provided a second, streamlined option for certain nonimmigrants (and others) who are already present here: seek an "adjustment of status" under 8 U.S.C. § 1255(a).

3

No. 16-30165

Section 1255(a) provides that, once an applicant meets certain specified requirements, the Secretary of Homeland Security may, "in h[er] discretion and under such regulations as [s]he may prescribe," "adjust[]" the applicant's immigration status to that of a lawful permanent resident.[1] But § 1255(c) carves out categories of aliens to whom § 1255(a) "shall not be applicable." For example, § 1255(a) shall not be applicable to certain aliens who are in "unlawful immigration status." § 1255(c)(2). And—critical to this case—§ 1255(a) "shall not be applicable to an alien crewman." § 1255(c)(1).[2]

The last piece of this case's statutory puzzle is the TPS program established by the Immigration Act of 1990 and codified at 8 U.S.C. § 1254a. This program allows the Secretary of Homeland Security to designate foreign countries suffering from humanitarian crises. *See* § 1254a(b). When a country is designated, eligible nationals of that country who are present in the United States may apply for TPS. *See* § 1254a(a)(1),(c). TPS-holders are then protected from removal and authorized to work. *See* § 1254a(a)(1). And "for purposes of adjustment of status under section 1255," they "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." § 1254a(f)(4).

B

Guerrero is a citizen and national of Honduras. In June 1998, the State Department issued him a combined C-1/D nonimmigrant visa. Such visas are issued to alien crewmembers who intend to transit through the United States (as C-1s) on their way to joining crews (as Ds). *See* § 1101(a)(15)(C),(D); 22 C.F.R. § 41.12; Dep't of State, 9 Foreign Affairs Manual § 402.8-8(b). Guerrero

---

[1] As of March 2003, immigration-law references to the Attorney General and the Immigration and Naturalization Service refer to the Secretary of Homeland Security and the U.S. Customs and Immigration Service, respectively. *See* 6 U.S.C. §§ 211(c)(8), 542, 557.

[2] Section 1255(c)'s restrictions do not apply to self-petitioners under the Violence Against Women Act and certain types of aliens described in § 1255(i). Guerrero does not purport to fit these categories.

was then inspected and admitted as a C-1 nonimmigrant. Per the terms of his admission, he was required to depart the country or join a crew within the next twenty-nine days. *See* 8 C.F.R. § 214.2(c)(3). He did neither.

Guerrero instead has remained in the country to this day, receiving TPS in 1999 and marrying a U.S. citizen in 2011. After his wife secured an immigrant visa for him on his behalf, Guerrero applied to have his status adjusted to that of a lawful permanent resident under § 1255(a).

The U.S. Customs and Immigration Service (USCIS) denied Guerrero's application. It interviewed him and found that "[his] last entry into the United States was as an alien crewman." It thus ruled him ineligible for adjustment of status by virtue of 8 U.S.C. § 1255(c)(1) and 8 C.F.R. § 245.1(b)(2). Guerrero sought reconsideration. In doing so, he conceded that "[h]is last entry into the United States [was] as an alien crewman." But he argued that this fact "has no bearing whatsoever" on his § 1255(a) application because the TPS statute "gives [him] lawful status regardless of his manner of entry." USCIS denied reconsideration in a short letter, which deemed Guerrero's TPS immaterial in light of § 1255(c)(1)'s alien-crewman bar.

Guerrero then filed this action in district court to compel USCIS to grant his § 1255(a) application. Although Guerrero styled his pleading a "petition for writ of mandamus," he did not invoke the district court's mandamus jurisdiction, *see* 28 U.S.C. § 1361, and all involved have construed his complaint as instigating a civil action under the judicial-review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–06.

The government moved to dismiss the action on the ground that Guerrero is statutorily ineligible for § 1255(a) as "an alien crewman." § 1255(c)(1). The district court denied the motion, concluding that the TPS statute's "humanitarian aims" trumped the limitations in § 1255(c)(1). *See Guerrero v. Johnson*, 138 F. Supp. 3d 754, 759–61 (E.D. La. 2015). Then, after providing

No. 16-30165

the parties a chance to respond, the district court entered summary judgment *sua sponte* for Guerrero. We review that judgment de novo, asking whether USCIS's decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *E.g.*, *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 753–54 (5th Cir. 2011).

## II

The parties and district court opinion all skip the critical threshold questions: what does it mean to be "an alien crewman" under § 1255(c)(1), and does Guerrero meet that standard? Based on the undisputed law and facts, we conclude he does.

Congress amended § 1255 in 1960 to exclude "alien crewm[e]n." Pub. L. No. 86-648, § 10, 74 Stat. 504, 505. The rationale for doing so was straightforward: "to deter them from 'jumping ship.'" *Guinto v. INS*, 774 F.2d 991, 992 (9th Cir. 1985). Specifically, Congress was concerned that, because crewmembers "have relatively easy access to the United States," they might "obtain legal residence by deserting and hiding out." *Matter of Goncalves*, 10 I. & N. Dec. 277, 279 (BIA 1963). To that end, USCIS and related agencies have consistently interpreted the phrase "alien crewman" in § 1255 to mean:

> [a]ny alien who, on arrival in the United States, was serving in any capacity on board a vessel or aircraft or was destined to join a vessel or aircraft in the United States to serve in any capacity thereon . . . .

8 C.F.R. § 245.1(b)(2) (construing 8 U.S.C. §§ 1101(a)(10), (15)(D), 1255(c)(1)).[3] Two features of this interpretation bear on the resolution of this case.

First, the government's interpretation is *functional*. It asks not whether an applicant's paperwork formally labels him a "D" nonimmigrant. Rather, it

---

[3] This interpretation was adopted on July 23, 1960, *see* 25 Fed. Reg. 7014, 7014–15, and enacted through notice and comment on December 19, 1961, *see* 26 Fed. Reg. 12,110, 12,114.

No. 16-30165

calls for a factual assessment of his purpose at the time of his latest entry. *See, e.g.*, *Matter of Campton*, 13 I. & N. Dec. 535, 537 (BIA 1970) ("[A] formal admission as a crewman is not required in finding that respondent, upon arrival, intended to pursue his calling as a crewman . . . . [I]t is substance rather than form which controls . . . ."); *Goncalves*, 10 I. & N. Dec. at 279–80 (C-1 transit alien who overstayed his visa was "barred from relief" under § 1225 "because he entered in pursuit of his calling as a seaman"); *Matter of Tzimas*, 10 I. & N. Dec. 101, 101–02 (BIA 1962) (same); *cf. Matter of G-D-M-*, 25 I. & N. Dec. 82, 85 (BIA 2009) (similarly interpreting 8 U.S.C. § 1229b(c)(1)). Other circuits adopt this view. *See, e.g.*, *Reganit v. Sec'y, Dep't of Homeland Sec.*, 814 F.3d 1253, 1258 (11th Cir. 2016); *Guerrero v. Holder*, 734 F.3d 45, 49 (1st Cir. 2013). And although our own circuit has yet to weigh in directly, that is immaterial in light of Guerrero's failure to contest the issue. Because Guerrero does not challenge the government's longstanding interpretation, we need not assess whether he can overcome the *Chevron* headwinds and persuade us to go a different way. *See Chevron v. NRDC*, 467 U.S. 837, 842–43 (1984). We assume without deciding that the government's functional approach applies.

Second, the government's interpretation is *retrospective*. It looks only to the facts as they existed at the time of the applicant's last entry. *See* 8 C.F.R. § 245.1(b)(2). Our own caselaw is in accord. In *Liu v. INS*, 645 F.2d 279, 284 (5th Cir. Unit A May 1981), we held that "[b]y act of Congress," § 1255 is "not available to aliens who enter the country as crewmen" and that, even when a crewmember later overstays his visa and marries a U.S. citizen, those actions do "not change the immutable fact that he entered the United States as an alien crewman." Although we did not define the substance of what it means to "enter as an alien crewman," *Liu* makes clear that the retrospective aspect of the government's interpretation is already binding on us.

7

No. 16-30165

With this legal definition in hand, we can turn to the facts. And factually speaking, there is no dispute that Guerrero "was destined to join a vessel" upon his last "arrival in the United States." 8 C.F.R. § 245.1(b)(2). Indeed, USCIS expressly found after an interview that "[his] last entry into the United States was as an alien crewman." And while the administrative record is too incomplete to fully assess that finding, Guerrero has conceded repeatedly in his briefs—to USCIS, to the district court, and to us—that "[h]is last entry into the United States [was] as an alien crewman." He is thus "an alien crewman" within the meaning of § 1255(c)(1).[4]

### III

Even so, Guerrero contends that the TPS statute exempts him from § 1255(c)(1)'s seemingly categorical bar. We assume without deciding that we owe no deference to the agency on this issue. But even without such deference, we still fail to see how Guerrero's arguments can prevail.

Statutory interpretation begins with the text. *E.g.*, *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1569 (2017). And § 1255(c)(1)'s text is clear: the relief Guerrero seeks "shall not be applicable to an alien crewman" like him. It falls to Guerrero to locate some other statutory provision freeing him from § 1255(c)(1)'s effect. He points to § 1254a(f)(4), which (we repeat) provides: "For purposes of adjustment of status under section 1255," a TPS-holder "shall be considered as being in, and maintaining, lawful status as a nonimmigrant."

---

[4] Guerrero has never argued that his receipt of TPS constituted a new, "fictional" admission to the country, such that his 1998 entry as an alien crewman was no longer his most recent entry or admission. *Cf. Gomez v. Lynch*, 831 F.3d 652, 659 n.9 (5th Cir. 2016) (recognizing "legally fictional admissions"). Any such argument is forfeited or even waived, given Guerrero's failure to address the meaning of "alien crewman" at all, and given his concessions to the agency that he "was inspected and admitted as an alien crewman" and that "[h]is last entry into the United States [was] as an alien crewman." We express no view as to the merits of such an argument.

8

No. 16-30165

But § 1254a(f)(4) cannot do the work Guerrero asks of it. Although Guerrero repeatedly asserts that this language "unambiguous[ly]" permits TPS-holders to adjust their status "regardless of prior manner of entry," that is not what the statute says. Instead of offering TPS-holders carte blanche to become lawful permanent residents, § 1254a(f)(4) extends to them the more narrowly-crafted benefit of "lawful status as a nonimmigrant." A full explication of what that benefit entails is beyond the scope of this appeal. All that matters here is whether Guerrero's "lawful status as a nonimmigrant" erases the historical fact that he last entered the United States "in pursuit of his calling as a seaman." *Goncalves*, 10 I. & N. Dec. at 279–80; *see Liu*, 645 F.2d at 284; 8 C.F.R. § 245.1(b)(2). Guerrero has not shown that it does.[5]

To start, the "lawful" component of Guerrero's "lawful status as a nonimmigrant" says nothing about whether he is also "an alien crewman" under § 1255(c)(1). It does remove the consequences of him overstaying his visa, at least for purposes of § 1255. But the fact that Guerrero overstayed his visa is not why USCIS denied his § 1255 application, and it is not what makes him "an alien crewman." Rather, Guerrero is "an alien crewman" because of the circumstances of his most recent entry to the country in 1998. As a result, he is ineligible under § 1225(c)(1) today for the same reason he was ineligible during the twenty-nine days in 1998 during which he held a valid visa. That § 1254a(f)(4) in some sense restores his lawful status does not change that fact.

Nor does it matter that § 1254a(f)(4) grants Guerrero status "as a nonimmigrant." As explained above, "nonimmigrant" is a formal descriptor referring to the classes of aliens defined in 8 U.S.C. § 1101(a)(15). Guerrero was classified as a "C-1" transit nonimmigrant when he first arrived, *see*

---

[5] *See supra* note 4.

§ 1101(a)(15)(C), and not, it bears noting, as a "D" "alien crewman" nonimmigrant, *see* § 1101(a)(15)(D)(1). But none of that matters for purposes of § 1255(c)(1), which, under the government's undisputed interpretation, looks to "substance rather than form." *Campton*, 13 I. & N. Dec. at 537 (holding that a "B-2" nonimmigrant was nonetheless "an alien crewman" for purposes of § 1255 because, as a matter of historical fact, he entered the country in pursuit of his occupation as a crewman); *Goncalves*, 10 I. & N. Dec. at 279–80 (same for C-1 nonimmigrant); *Tzimas*, 10 I. & N. Dec. at 101–02 (same). Thus, regardless whether § 1254a(f)(4) gives Guerrero the status of a "C-1," a "D," a "B-2," an "H-1B," all of the above, none of the above, or something else entirely, it still cannot alter the historical circumstances of his entry on which the § 1255(c)(1) inquiry depends. To that, § 1254a(f)(4) is irrelevant.

Guerrero responds by pointing to the developing circuit split on whether TPS-holders automatically fulfill § 1255(a)'s requirement of having been "inspected and admitted or paroled into the United States." § 1255(a). *Compare Ramirez v. Brown*, 852 F.3d 954, 958 (9th Cir. 2017) (yes), *and Flores v. USCIS*, 718 F.3d 548, 551, 554 (6th Cir. 2013) (yes), *with Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1265 (11th Cir. 2011) (no). But this case as presented does not implicate that issue. USCIS denied Guerrero's application based on § 1255(c)(1)'s alien-crewman bar—not a failure to meet the requirements in § 1255(a). Our review is thus confined to the validity of that alien-crewman determination, leaving the effect of TPS on § 1255(a)'s requirements to be decided another day. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Garcia-Carias v. Holder*, 697 F.3d 257, 261 n.1 (5th Cir. 2012).

If anything, the Ninth Circuit's *Ramirez* decision actually highlights the flaw in Guerrero's position. *Ramirez* held that receipt of TPS is legally equivalent to being "inspected and admitted or paroled" for purposes of § 1255(a). 852 F.3d at 957. The court reasoned that § 1254a(f)(4) confers "lawful status as a

nonimmigrant," and that, under the immigration laws, no one can be in lawful status as a nonimmigrant without having been inspected and admitted or paroled. *Id.* at 960. Thus, the court held, § 1254a(f)(4)'s grant must entail the same thing. *Id.* But that same logic falls apart in Guerrero's case. Clearly it is possible to maintain "lawful status as a nonimmigrant" without being "an alien crewman" (and vice versa): the two concepts are ships passing in the night. So whereas *Ramirez*'s reasoning closes the gap between having "lawful status as a nonimmigrant" and being "admitted and inspected or paroled," Guerrero has not shown that his "lawful status as a nonimmigrant" affects—let alone extinguishes—his last entry as "an alien crewman" under the uncontested interpretation of § 1255(c)(1). Without a passable textual hook, Guerrero's atextual reading of § 1254a(f)(4) fails.[6]

Although the district court briefly discussed the statutory language, it did so only to recognize that the text cut *against* its holding.[7] Then, rather than re-aligning its interpretation of the statute to match what the statute says, the district court concluded that it would be "unreasonable" to require Congress specifically to amend §§ 1255(c)(1) and 1254a(f)(4) to accommodate alien crewmembers with TPS, and held that the TPS statute's "humanitarian aims" should take precedence over Congress's expressed concern with crewmembers

---

[6] Guerrero also asserts that the description of 8 U.S.C. § 1254a(a)(5) given in *United States v. Orellana*, 405 F.3d 360, 364 & nn.18, 20 (5th Cir. 2005), somehow means that he "is not bound to the consequences of his initial entry as a crewman." *See* Appellee Br. at 16–18. Unable to make heads or tails of this argument, we deem it forfeited as inadequately briefed. *See, e.g., Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (applying briefing forfeiture rule to the appellee). We see no relevance in § 1254a(a)(5).

[7] *See, e.g., Guerrero*, 138 F. Supp. 3d at 758 ("[T]he language of § 1255 does not apparently contemplate exceptions to the general bar on alien crewmen."); *id.* at 759 ("Alien crewman status . . . can be a lawful [non]immigrant status (nonetheless barred from adjustment under § 1255(c)(1)) and one could argue that all the language of § 1254a(f)(4) accomplishes in a case like Guerrero's is to remove 'overstayed' from Guerrero's alien crewman status."); *id.* at 760 (acknowledging that § 1254a(f)(4) does not "carefully interact with the finer details of nonimmigrant visa statuses").

"jumping ship." *See Guerrero*, 138 F. Supp. 3d at 760–61. But because courts "ha[ve] no roving license . . . to disregard clear language simply on the view that . . . Congress 'must have [or, as a policy matter, should have] intended' something broader," *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2034 (2014), this approach was error.

We reverse and render judgment for the government.