MATTER OF GONCALVES

In DEPORTATION Proceedings

A-9948279

*Decided by Board June 4, 1963*

Since respondent's entry in transit in pursuit of his calling as a seaman to re-
ship foreign on another vessel constitutes entry as a crewman, he is statutorily
ineligible for suspension of deportation and for adjustment of status under
sections 244 and 245, respectively, of the Immigration and Nationality Act, as
amended.

CHARGE:

Act of 1924—Remained longer—transit.

On February 19, 1963 the Board denied respondent's motion to re-
open proceedings to enable him to apply for relief under sections 244
and 245 of the Act. Reconsideration is requested of the order insofar
as it relates to section 245 of the Act. The motion will be denied.

Respondent, a 43-year-old married male alien, a native of the Cape
Verde Islands and citizen of Portugal, last entered the United States
on December 7, 1947. A seaman employed on an American vessel sold
abroad, he was brought back to the United States in transit so that he
could ship foreign; he was admitted until January 4, 1948, for that
purpose. Unable to obtain employment as a seaman after several
months of search, either because of a strike or because of the fact that
he was an alien, he took a job in the United States.

On March 26, 1952 a hearing officer found respondent deportable on
the ground that he had remained longer than the time for which he
had been admitted. The hearing officer denied discretionary relief.
Upon appeal, the Board considering respondent's request for sus-
pension of deportation and voluntary departure decided (April 14,
1953) that suspension was not merited but did grant voluntary
departure.

The respondent did not depart. On July 31, 1954 he married a
woman who believing herself to be a citizen of the United States,
filed a petition to enable him to obtain a nonquota visa. The petition

277

was granted on June 13, 1962 after a delay which had been caused by an issue raised by the Service as to the wife's citizenship. Respondent then filed a motion for the reopening of deportation proceedings to enable him to apply for relief under sections 244 and 245 of the Act. On February 19, 1963 the Board denied the application for reopening of proceedings on the ground that the respondent was ineligible for either of the reliefs. The Board held that since seamen are barred from the reliefs, and since respondent's entry in transit to ship on another vessel constituted an entry as a seaman, he was barred.

The provision of law on which the Board based its ruling that respondent was ineligible for relief under section 244 of the Act (suspension of deportation) follows:

> No provision of this section [s/d] shall be applicable to an alien who (1) entered the United States as a crewman; or (2) was admitted to the United States pursuant to section 101(a)(15)(J) of this title or has acquired such status after admission to the United States; or (3) is a native of any country contiguous to the United States or of any adjacent island named in section 101(b)(5) of this title: (section 244(f) of the Act).

Counsel contends that respondent was not admitted to the United States as a crewman but in transit, and is therefore not a crewman barred from relief. That admission to the United States must be made in the status of a crewman to bring about an alien's ineligibility for suspension of deportation, is deduced by counsel from a comparison of sections 244 and 245 of the Act. That comparison indicates to him that alien crewmen as a class are barred from relief by section 245 but that only alien crewmen who were formally admitted to the United States under the law relating to the admission of alien crewmen are barred from relief under section 244. Counsel draws this conclusion from the fact that section 245 of the Act grants relief to one "other than an alien crewman" whereas section 244 of the Act grants relief unless the alien "*entered* the United States as a crewman" (emphasis supplied). Counsel finds the difference in language of particular significance since in revising section 244 of the Act (1962) after the phrase concerning crewmen in section 245 of the Act had been in use since 1960, Congress did not make use of the language of section 245 of the Act.

Let us examine the contention that the term "entered" in section 244(f) of the Act was used to indicate that an alien had been formally authorized by the Service to enter the United States as a crewman. The word "entry" as applied to respondent who was not a returning resident means any physical passing from a foreign place to the United States whether legally or illegally made, except a passing under the terms of a parole (*Matter of Anastasopoulos*, Int. Dec. No. 1154).

There is nothing in section 244(f) of the Act which requires that the term be given any but its well recognized meaning; the term thus cannot mean the formal admission of a crewman as such by a Service official.

That a formal admission of a crewman by the Service was not contemplated, may be seen from the fact that the very section in question which makes crewmen who "entered" ineligible provides for the ineligibility of participants in a Department of State program who were "*admitted* to the United States pursuant to section 101(a)(15)(J)" of the Act (emphasis supplied). The use of the term "entered" for seamen and the use of the word "admitted" for a different class well disposes of the argument that Congress intended to bar only aliens who were "admitted" as crewmen.

Another reason for rejecting counsel's contention that only aliens who were legally admitted in the status of crewmen are barred from relief is the fact that such a law would favor the alien who entered illegally over the one who entered legally. If indeed only an alien who was "admitted" as a crewman is barred from relief, then the crewman who entered illegally, i.e., the one ordered detained on board his vessel who escaped into the United States, would not be barred from relief. It is hardly likely that Congress intended such a result. Rather, we believe it was the intent of Congress to bar all occupational seamen who entered by reason of their occupation. This result would best meet the problem which faced the Congress—the fact that seamen who have relatively easy access to the United States have used the seaman route to enter the United States for permanent residence—a problem which has engaged a good deal of the Service energies and which would be aggravated if persons having easy access to the United States were of the belief that they could obtain legal residence by deserting and hiding out (Hearings, Subcommittee on Appropriations H.R. (Dept. of Justice) 85th Cong., 2d Sess. pp. 13–14, 199 (1959); 86th Cong., 1st Sess. pp. 25, 305 (1960); 86th Cong., 2d Sess. pp. 409–411 (1961). In light of this problem, it matters little that an alien is admitted as a crewman and deserts his ship, or that he deserted the ship without being permitted to land as a crewman, or that he, as is common-place, was brought to the United States as a passenger or workaway to reship as a seaman on another vessel.

We believe that the respondent is barred from relief because he entered in pursuit of his calling as a seaman. That he entered by reason of his occupation is clear from his testimony which shows he entered the United States to ship out as a seaman (pp. 2–3), by the record of his entry which shows that he entered as a crew member, that he was a seaman and was coming to the United States to reship

foreign (Ex. 4), and by the fact the same record shows that for head tax purposes, respondent was placed under 8 CFR 105.3(k) which dealt with the nonresident occupational seaman who was entering the United States temporarily in pursuit of his occupation, or as a passenger or workaway and who was admitted solely for the purpose of reshipping foreign.

**ORDER:** It is ordered that the motion be and the same is hereby denied.