MATTER OF REBELO

In Deportation Proceedings

A-15382877

*Decided by Board October 24, 1968*

Notwithstanding respondent at the time of his last entry in April 1965 was serving as a crewman on board the vessel on which he arrived, was listed on the vessel's arrival manifest as a crew member, and for 25 years immediately preceding had been a crewman by occupation, he is not precluded from establishing statutory eligibility for adjustment of status under section 245, Immigration and Nationality Act, as amended, since he was inspected and admitted at that time as a temporary visitor for pleasure upon presentation of a valid nonimmigrant visa.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251]—Nonimmigrant (temporary visitor for pleasure)—remained longer.

ON BEHALF OF RESPONDENT:
Bertrand D. Gerber, Esquire
119 West 57th Street
New York, New York 10019

ON BEHALF OF SERVICE:
Robert A. Vielhaber
Appellate Trial Attorney

The special inquiry officer, in a decision dated April 29, 1968, denied the respondent's application for adjustment of his status to that of a permanent resident; granted his alternative request for voluntary departure; and provided for his deportation from the United States to Brazil, alternatively to Portugal, on the charge contained in the order to show cause, in the event of his failure to so depart. We will remand the case to the special inquiry officer, for the reasons hereinafter set forth.

The record relates to a 59-year-old male alien, a native and national of Portugal, who last entered the United States on or about April 12, 1965. He was then admitted as a nonimmigrant temporary visitor for pleasure, on the basis of his presentation of a B-2 visa obtained from an American Consul in Japan. He was thereafter authorized to remain in the United States as a tempo-

rary nonimmigrant visitor for pleasure until September 11, 1966. He has, however, remained here since that date without authority.

The foregoing establishes the respondent's deportability on the charge contained in the order to show cause, and this is uncontested. The special inquiry officer has granted the respondent's alternative request for voluntary departure, and the record before us supports said official's action in this respect. The only remaining issue is whether, as the special inquiry officer has found, the respondent is ineligible for adjustment of his status to that of a permanent resident, because for the 25 years immediately preceding his last entry, respondent had been a crewman by occupation; at the time thereof he was serving as an engineer aboard the vessel on which he arrived; and he was listed as a member of the crew on the vessel's arrival manifest. Our answer, based on the following pertinent provisions of the statute and the related regulations, is in the negative.

Section 245(a) of the Immigration and Nationality Act (8 U.S.C. 1255) provides that:

The status of an alien, *other than an alien crewman*, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence * * *. (Emphasis supplied.)

In our opinion the clear meaning of this language is that an alien who happens to be serving as a crewman at the time of his entry is barred from adjustment of his status to that of a permanent resident only if, insofar as is here pertinent, he has been inspected and admitted or paroled into the United States as such. But this respondent was inspected and admitted as a properly documented nonimmigrant temporary visitor for pleasure, and not as a crewman. Therefore, it is our judgment that he is not ineligible for the relief in question on the ground used by the special inquiry officer.

Support for ruling is found in the fact that, while section 101(a)(10) of the Immigration and Nationality Act (8 U.S.C. 1101) does define a "crewman" as "a person serving in any capacity on board a vessel or aircraft," section 101(a)(15)(D) thereof further characterizes a "crewman" as one "* * * who intends to land in pursuit of his calling as a crewman * * *." The reading of these two provisions together, as is necessary so that the law will produce a harmonious whole,[1] reveals that two ele-

---

[1] *In re Public National Bank of New York*, 278 U.S. 555.

ments are required to constitute an alien a "crewman," for present purposes at least, to wit:

(1) he must be serving aboard a vessel in a capacity required for its normal operation; and

(2) he must be seeking (and gain) admission to this country because of his occupation in that role.

Obviously, since the record before us reflects that the respondent was admitted as a nonimmigrant temporary visitor for pleasure and was properly documented as such, the second essential factor is not present in this case. In this connection, we find it significant that the deportation proceedings against the respondent were based solely on the charge that he was a temporary visitor for pleasure who had remained here in that status for a longer period of time than authorized.[2]

Also, our interpretation, *ante*, follows the well recognized rules of construction that the statute, being a remedial one, must be liberally interpreted to suppress the evil and advance the remedy; and the exception carved out of it must be explained principally in view of the legislative intent.[3] On this point, the history of section 245 shows that the Congress intended to bar from relief only such aliens as had gained relatively easy access to the United States by reason of their occupation as crewmen.[4] Obviously, again, this respondent was not admitted because of his employment as a crewman and in pursuit of his calling, but as a properly documented temporary visitor for pleasure who convinced a United States Consul abroad and an examining immigration officer here that he was entitled to entry as a visitor rather than as a crewman.

Clearly, as in the case of any other alien, a crewman entering this country before (without) inspection, or after having been inspected and refused admission, would be ineligible for adjustment of his status to that of a permanent resident. This result would flow naturally and inescapably from the statutory requirements of inspection and admission or parole.

Our decision herein does not have the effect of holding that the relief in question may not, consistently with prior precedent deci-

---

[2] See *Matter of T—*, 5 I. & N. Dec. 459, holding that ineligibility for discretionary relief (voluntary departure) must be based on a sustained charge of deportability.

[3] *Sutherland, Statutory Construction*, 3rd ed., Vol. 2, secs. 3302 and 4936.

[4] *Matter of Goncalves*, 10 I. & N. Dec. 277 at 279, involving an alien who was occupationally a crewman and, while admitted in transit, was so admitted to ship foreign as a crewman.

sions of this Board,[5] be withheld upon a showing that the respondent, in following the procedure he did to gain admission into the United States, had a preconceived intent to circumvent the normal immigrant visa issuing process. This, however, is entirely different from finding him ineligible for relief on the basis of a strained construction of the language used in the statute, however convenient the latter course of action might be from the standpoint of enforcement of the law.[6] The language of 8 CFR 245.1(a) does not justify resort to the alternative procedure thus outlined, because it cannot exceed the scope of the statute on which it depends.[7]

Actually, our ruling herein is, we find, consistent with those we have heretofore rendered in somewhat similar situations. Thus, on June 11, 1965, we dismissed a Service appeal from a special inquiry officer's order granting section 245 relief to a Greek alien, a seaman by occupation, who had deserted his ship in Canada 25 days before entering the United States at Messena, New York; and we denied the Service motion for reconsideration of that decision, on September 8, 1965.[8] So, also, we authorized adjustment of status to that of a permanent resident in the case of an alien who, while arriving in the United States aboard a freighter which ordinarily carries no passengers, did in fact serve meals to the crew and wash dishes after meals, but was in possession of a nonimmigrant visa and was admitted by an immigration officer as a temporary visitor for pleasure upon presentation of an appropriate visa.[9] While the decision in the latter case cited above was based on the holding that, on the facts, the alien involved was not employed as a crewman at the time of his arrival, we think our reasoning in that case points to the logical extension of the ruling therein to the present situation.

Accordingly, and in view of the foregoing, we will withdraw the special inquiry officer's order of April 29, 1968. However, we will remand the matter to said official for reopening of the proceedings for consideration of the respondent's eligibility otherwise and/or whether relief is warranted herein, as a matter of discretion. In the latter connection, we note that counsel for respondent, in the course of oral argument (p. 2), indicated that,

[5] *Matter of Tonga*, A-14674907, BIA, 5/3/67, 12 I. & N. Dec. 212; and *Matter of Muslemi*, A-17256526, BIA, 5/31/67, 12 I. & N. Dec. 249.

[6] *United States* v. *J. H. Winchester & Co., Inc.*, 40 F.2d 472

[7] *United States* v. *Smull*, 236 U.S. 405

[8] *Pappas*, A-14012058, unreported.

[9] *Matter of Quintero-Correa*, 11 I. & N. Dec. 343.

although the respondent is married to a citizen of the United States, there is some question as to whether or not his wife will file and prosecute a petition for an immigrant visa for the respondent.

**ORDER:** It is ordered that the special inquiry officer's decision of April 29, 1968, be withdrawn and that the case be remanded to said official for appropriate action not inconsistent with the foregoing opinion.