## MATTER OF LOO

### In Deportation Proceedings

### A-11407844

*Decided by Board March 3, 1976*

Respondent, who initially gained admission to this country by virtue of a 1954 judgment of a court declaring him to be a citizen of the United States; who, many years after the court judgment, took up the occupation of seaman which he followed from 1963 until February of 1966, shortly after which he confessed alienage; and who effected all of his seaman entries as the citizen he had been adjudged to be, is not precluded by the "crewman" provision of section 244(f)(1) of the Immigration and Nationality Act, as amended, from establishing statutory eligibility for suspension of deportation under section 244(a) of the Act, as amended.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—In the United States in violation of law.

ON BEHALF OF RESPONDENT: Robert S. Bixby, Esquire
Fallon, Hargreaves, Bixby & McVey
30 Hotaling Place
San Francisco, California 94111

The respondent is a native and citizen of China who has been found deportable under section 241(a)(2) of the Immigration and Nationality Act as an alien who is in the United States in violation of the Act. The only questions presently unresolved in this case relate to the respondent's application for suspension of deportation under section 244(a)(1). In a decision dated September 25, 1975, the immigration judge found that the respondent had entered the United States in 1966 as a crewman and that he was statutorily precluded from receiving suspension of deportation by virtue of section 244(f) of the Act. The immigration judge certified his decision to us for review. The decision of the immigration judge will be reversed, and the respondent's application for suspension of deportation will be granted.

The record indicates that the respondent first arrived in the United States on July 21, 1951, and then sought admission as a United States citizen. He was initially ordered excluded. However, he obtained a court decree, dated January 29, 1954, declaring him to be a citizen of the

United States. Later, in 1958, the respondent was also issued a certificate of citizenship. In February of 1966 the respondent confessed his alienage. The court decree was set aside in July of 1966, and the certificate of citizenship was cancelled in October of 1966.

The record indicates that the respondent came to the United States in 1951 on board the SS "President Wilson." It is not clear whether he came as a passenger or as a crewman. A resolution of this point, however, is not necessary because the respondent's 1951 entry cannot be used to deny him suspension of deportation under the present wording of section 244(f). See *Siang Ken Wang* v. *INS*, 413 F.2d 286 (C.A. 9, 1969).

At the time of his arrival in 1951, the respondent formally applied for admission as a United States citizen and not as an alien. Thereafter, the respondent appears to have worked in numerous jobs, such as waiter, busboy, or cashier, until 1963 when he began to work as a seaman. Between 1963 and 1966, the respondent made approximately twelve voyages abroad as a United States citizen seaman. He last entered the United States on February 2, 1966, as a citizen, but after returning from a voyage as a seaman. The respondent evidently terminated his occupation as a seaman on February 4, 1966, two days after his last entry. As indicated, he shortly thereafter confessed his alienage.

Section 244 of the Act sets forth the requirements for suspension of deportation. Section 244(f) provides in relevant part:

> (f) No provision of this section shall be applicable to an alien who (1) entered the United States as a crewman subsequent to June 30, 1964 . . . .

The question before us is whether the respondent's entries after June 30, 1964 make him ineligible for suspension of deportation.

The term "crewman" is defined in section 101(a) (10), which provides:

> (10) The term "crewman" means a person serving in any capacity on board a vessel or aircraft.

The Act also allows a qualified "crewman" to be admitted to the United States in the status of a "nonimmigrant crewman." The requirements for this status are set forth in section 101(a)(15)(D), which provides:

> (15) The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—
>
> . . . .
>
> (D) an alien crewman serving in good faith as such in any capacity required for normal operation and service on board a vessel (other than a fishing vessel having its home port or an operating base in the United States) or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft.

The cases indicate that section 101(a)(10) and section 101(a)(15)(D) must

be read in conjunction when construing the crewman provision of section 245, a provision which is analogous to the quoted portion of section 244(f). *Matter of Campton*, 13 I. & N. Dec. 535 (BIA 1970); *Matter of Rebelo*, 13 I. & N. Dec. 84 (BIA 1968). If certain requirements are met, section 245 permits the adjustment of status of "an alien, *other than an alien crewman* . . . ." (Emphasis supplied.)

The basic purpose behind the crewmen provisions of section 244(f) and section 245 is similar, although the wording of the provisions is not identical. Thus, we have noted in connection with both provisions that Congress was attempting to deal with the problem of the alien who uses the seaman's route to gain relatively easy access to the United States and to enter for the purpose of residing permanently. See *Matter of Quintero-Correa*, 11 I. & N. Dec. 343, 346–47 (BIA 1964); *Matter of Goncalves*, 10 I. & N. Dec. 277, 279 (BIA 1963).

The problems in construing these preclusions from relief for crewmen have generally arisen when the alien in question obtained admission to the United States in a status other than that of a section 101(a)(15)(D) nonimmigrant crewman. In *Matter of Tzimas*, 10 I. & N. Dec. 101 (BIA 1962), we found that an alien who was admitted in transit by virtue of section 101(a)(15)(C) was ineligible for section 245 relief as a crewman, because he was destined for employment as a seaman. Similarly, in *Matter of Goncalves*, supra, we indicated that an alien who was admitted to the United States as a nonimmigrant in transit was ineligible for suspension of deportation because he was occupationally a seaman who was entering in pursuit of his calling as a seaman. In *Goncalves*, we rejected the argument that the status in which an alien was *admitted* governed whether or not he had *entered* as a crewman within the contemplation of section 244(f).

However, in *Matter of Quintero-Correa*, supra, we found that an alien who was admitted with a nonimmigrant visitor's visa was not statutorily precluded from receiving adjustment of status as a crewman, even though he arrived on board a vessel on which he had worked regular hours serving meals to the crew. The alien apparently came within the section 101(a)(10) definition of a crewman; however, he was not a seaman by occupation, he had obtained admission as a properly documented nonimmigrant visitor, and it was mere happenstance that he arrived in the United States after serving on board a vessel.

In *Matter of Rebelo*, supra, we dealt with an alien who was admitted to the United States as a nonimmigrant visitor. The alien, however, had served as a crewman for a 25-year period immediately preceding his admission, had served as the ship's engineer on the vessel which brought him to the United States, and had been listed on the ship's manifest as a crewman. We nevertheless found that he was not statutorily precluded from receiving adjustment of status, primarily because he

had convinced a consular official that he was eligible for a visitor's visa, and because he was properly admitted as such.

In *Matter of Campton*, supra, however, we took a somewhat different approach to the crewman question. In *Campton*, the alien had last entered the United States by automobile with a nonimmigrant visitor's visa evidently after a three months' visit to Canada. The alien, however, had been a crewman for the prior twelve years and was coming to the United States for the purpose of continuing his crewman's occupation. We held that the alien was not eligible for adjustment of status, and we distinguished *Matter of Rebelo*, supra, on the ground that in *Rebelo* there had been a showing that the alien was not entering in pursuit of his calling as a seaman.

These cases are not entirely consistent, and, as the immigration judge correctly notes, some of the discussion in *Rebelo* can be seriously questioned. However, all of these cases deal with aliens who were admitted to the United States in some nonimmigrant status. The respondent, on the other hand, was admitted in each instance as a United States citizen. Although his claim to citizenship was false, it was virtually unassailable at the time because it was supported by the final judgment of a court. The respondent therefore was not in the same position as either an alien seeking admission in a nonimmigrant status or an alien making a *simple* false claim to United States citizenship.

We need not now attempt to resolve all the issues presented by the statutory exclusion of crewmen from the forms of relief of adjustment of status and suspension of deportation. We merely hold that the preclusion of suspension of deportation for a crewman contained in section 244(f) does not apply to an individual who initially gains admission to the United States by virtue of a judgment of a court declaring him to be a citizen, who many years after the court judgment takes up the occupation of seaman, and who effects all of his seaman entries as the citizen he has been adjudicated to be.

The respondent did not use the crewman's route to gain access to the United States from 1963 to 1966. He was at that time a person who had been declared to be a citizen of the United States, and it was mere happenstance that he took up the calling of the sea. See *Matter of Quintero-Correa*, supra. The respondent's entries after June 30, 1964 were accomplished by virtue of his status as a United States citizen, not by virtue of his occupation. Our decision in *Matter of Goncalves*, supra, indicates that his admission in that status may not necessarily be controlling; however, it is a factor for consideration as indicated by *Matter of Quintero-Correa*, supra, and *Matter of Rebelo*, supra. We hold that this respondent is not precluded from receiving suspension of deportation by virtue of the "crewman" provision in section 244(f) of the Act.

When this case was last before the immigration judge, an updated

Service investigation was introduced into evidence, and additional testimony was taken with respect to the respondent's application for suspension of deportation. In view of this update of the record, we need not remand for an exercise of discretion by the immigration judge.

The respondent is presently 53 years old. The record indicates that he fled mainland China in 1949 or 1950, that he resided briefly in Hong Kong, and that he has made his home in the United States since 1951. He has not left the United States since 1966. The respondent testified that he has a daughter who is a lawful permanent resident, and that he has made a small investment in the United States business in which he is employed.

The Service investigation has revealed no recent derogatory information, except for an arrest in 1971, which resulted in the charges being dismissed. We find that the respondent satisfies the physical presence and good moral character requirements of section 244(a)(1), and that he would suffer extreme hardship if deported from the United States. Deportation of the respondent would not only cause him significant economic hardship, but it would also separate him from his home and the ties he has developed in this country over the last 25 years. Finally, we are of the opinion that the respondent should receive a favorable exercise of discretion on his application for suspension of deportation.

The decision of the immigration judge will be reversed, and the respondent's application for suspension of deportation under section 244(a)(1) will be granted.

[1] ORDER: The decision of the immigration judge is reversed.

*Further order:* The respondent's deportation is suspended under section 244(a)(1) of the Immigration and Nationality Act.

*Further order:* If Congress takes no action adverse to the order granting suspension of deportation, the proceedings shall be cancelled, and appropriate action shall be taken pursuant to section 244(d) of the Immigration and Nationality Act, as amended.

*Further order:* In the event Congress takes action adverse to the order granting suspension of deportation, these proceedings shall be reopened upon notice to the respondent.

---

[1] Chairman David L. Milhollan abstained from consideration of this case.