# United States Court of Appeals

## For the First Circuit

No. 11-1175

JULIO GONZALEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Vikas S. Dhar, Dhar Law, LLP, on brief for petitioner.
Carmel A. Morgan, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Tony West, Assistant Attorney General, Civil Division, and Jennifer P. Levings, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

March 14, 2012

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL**, **Circuit Judge**.  Julio Gonzalez is a native and citizen of Guatemala who has petitioned for our review of the denial of his application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA).  See Pub. L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997).  We agree with the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) that Gonzalez is statutorily ineligible for NACARA relief because he last entered the United States as a crewman.  We therefore deny the petition for review.

Congress enacted NACARA in 1997 to amend the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and permit individuals from certain countries to seek discretionary relief from removal or deportation under more lenient statutory standards that predated IIRIRA.  See, e.g., Gonzalez-Ruano v. Holder, 662 F.3d 59, 60 (1st Cir. 2011).  Specifically, section 203 of NACARA allows individuals from Guatemala to apply for what is known as "special rule" cancellation of removal.  See NACARA § 203, 111 Stat. at 2196-99; 8 C.F.R. §§ 1240.64-1240.66. An applicant for special rule cancellation of removal must satisfy a number of requirements that we need not detail here, because this case presents the discrete question of whether Gonzalez is barred from NACARA relief because he last entered the United States as a crewman.  Under section 240A(c) of the Immigration and Nationality

-2-

Act (INA), an individual "who entered the United States as a crewman subsequent to June 30, 1964" is ineligible for cancellation of removal.  8 U.S.C. § 1229b(c)(1).

Though neither party has addressed whether any portion of Gonzalez's appeal is foreclosed by the jurisdiction-stripping provision codified at 8 U.S.C. § 1252, we must do so sua sponte. See, e.g., Spooner v. EEN, Inc., 644 F.3d 62, 67 (1st Cir. 2011). Special rule cancellation of removal applications under NACARA are subject to 8 U.S.C. § 1252(a)(2)(B)(i), which bars judicial review of "'any judgment regarding the granting of relief' relative to cancellation of removal." Gonzalez-Ruano, 662 F.3d at 63 (quoting 8 U.S.C § 1252(a)(2)(B)(i)); see also NACARA § 203, 111 Stat. at 2198.  We retain jurisdiction to review "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), but "cannot review discretionary determinations regarding requests for special rule cancellation of removal under NACARA, absent legal or constitutional error," Gonzalez-Ruano, 662 F.3d at 63.

In his petition for review, Gonzalez raises three challenges to the agency's denial of his application for special rule cancellation of removal.  First, he argues that he did not meet the statutory definition of a "crewman" at the time he last entered the United States.  Second, he claims that the agency did not give him proper notice of, or an opportunity to respond to, the allegation that he had last entered as a crewman.  Third, he urges us to find that, even if he did qualify as a crewman at the time of

-3-

his last entry, barring him from NACARA relief contravenes congressional intent. With one possible exception, which we discuss below, the issues Gonzalez has presented for our review are questions of law that fall within our jurisdiction. Id.

Where, as here, "the BIA has conducted an independent evaluation of the record and rested its decision on a self-generated rationale," we focus our review on the decision of the BIA, rather than the decision of the IJ. Zhou Zheng v. Holder, 570 F.3d 438, 440 (1st Cir. 2009). We review the BIA's legal conclusions de novo, giving deference to the agency's reasonable interpretation of the statutes and regulations within its purview. Castañeda-Castillo v. Holder, 638 F.3d 354, 362 (1st Cir. 2011).

We begin with Gonzalez's claim that he did not qualify as a "crewman" under the INA when he last entered and thus should not have been barred from NACARA relief. The INA contains two definitions of "crewman." The first describes a crewman as "a person serving in any capacity on board a vessel or aircraft." 8 U.S.C. § 1101(a)(10). The second defines an "alien crewman" as an individual "serving in good faith as such in a capacity required for normal operation and service on board a vessel . . . who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft." 8 U.S.C. § 1101(a)(15)(D)(i). The BIA reads these two definitions

-4-

"in conjunction when construing the crewman provision," Matter of Loo, 15 I. & N. Dec. 601, 603 (BIA 1976), and "examine[s] an alien's visa and the circumstances surrounding his entry into the United States to determine if he entered as a crewman," Matter of G-D-M-, 25 I. & N. Dec. 82, 85 (BIA 2009). "If it is apparent . . . that the alien was issued a visa as a crewman and entered the United States in pursuit of his occupation as a seaman, then he is to be regarded as an alien crewman." Id. We defer to that reasonable interpretation of the INA. Castañeda-Castillo, 638 F.3d at 362.

Gonzalez first entered the United States without inspection on October 15, 1988. In what appears to have been 1995, he left the United States and returned to Guatemala. He then reentered the United States in 1997. The Notice to Appear (NTA) that the Department of Homeland Security (DHS) issued to Gonzalez in February 2008 alleged that he had last been admitted to the United States "on or about February 1, 1997 as a nonimmigrant alien in transit with authorization to remain in the United States for a temporary period not to exceed March 2, 1997." Before the IJ, however, the government submitted into evidence Form I-213, entitled "Record of Deportable Alien," which alleged that Gonzalez had last entered on March 2, 1997 in Los Angeles, California, aboard the cruise ship "Ms. Jubilee." According to the form, Gonzalez arrived aboard the Jubilee at 7:00 a.m. on March 2, his

-5-

name was on the list of crewmen, and he was granted D-1 status[1] by the immigration inspector. That evening, as the vessel was about to set sail, "it was noticed that [Gonzalez] was not present at his duty station," and he was reported to U.S. immigration officials as a deserted crewman. The government also submitted a copy of Gonzalez's D-1 visa, which listed March 2, 1997 as his last date of entry in Los Angeles, aboard the Jubilee.

Furthermore, Gonzalez stated in a brief submitted in advance of his merits hearing before the IJ that he had last been admitted to the United States as a crewman. At the hearing itself, he testified that when he returned to the United States in 1997, it was with a "crew member's visa," that he was a crewman at the time that he last entered, and that he was working aboard a cruise ship. He said that he "decided at the last minute to stay" in the United States because he became "ill inside the boat." Gonzalez also testified that he has not left the United States since then.

Based on that testimony and documentary evidence, the BIA concluded that, after initially being admitted to the United States on February 1, 1997 on a C-1 visa[2] as a nonimmigrant in transit,

---

[1] A "D-1" classification is given to "an alien crewman . . . who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft." 8 U.S.C. § 1101(a)(15)(D)(i); see also 8 C.F.R. § 214.1(a)(2).

[2] A "C-1" classification is given to "an alien in immediate and continuous transit through the United States." 8 U.S.C. § 1101(a)(15)(C); see also 8 C.F.R. § 214.1(a)(2).

Gonzalez had most recently reentered the country with a D-1 crewman's visa on March 2, 1997 to seek medical care and has remained here ever since.

Gonzalez now claims that his last entry occurred in February 1997 with a C-1 visa, which he views as insufficient to bar him from NACARA relief. We need not decide whether we have jurisdiction to review Gonzalez's quarrel with the BIA's factual determination that he last entered the United States specifically with a D-1 visa in March 1997. See Ayeni v. Holder, 617 F.3d 67, 72 (1st Cir. 2010) (finding, in a regular cancellation of removal case, no jurisdiction over a claim that "comprises nothing more than a challenge to the correctness of the BIA's factfinding"). We can disregard that claim entirely, because the BIA has never ruled, as Gonzalez suggests, that the particular type of visa with which a person enters is outcome-determinative. See Matter of G-D-M-, 25 I. & N. Dec. at 85-86 (respondent admitted as C-1 nonimmigrant in transit qualified as crewman); Matter of Campton, 13 I. & N. Dec. 535, 538 (BIA 1970) (respondent admitted as B-2 nonimmigrant visitor for pleasure qualified as crewman); Matter of Goncalves, 10 I. & N. Dec. 277, 278-79 (BIA 1963) (respondent admitted as C-1 nonimmigrant in transit qualified as crewman); Matter of Tzimas, 10 I. & N. Dec. 101, 101-02 (BIA 1962) (same); see also Sarup v. Att'y Gen. of U.S., 423 F. App'x 231, 234 (3d Cir. 2011) (same).

Indeed, the BIA has explicitly rejected the "contention that only aliens who were legally admitted in the status of crewmen

-7-

are barred from relief." Matter of Goncalves, 10 I. & N. Dec. at 279. Instead, the agency has examined the circumstances surrounding an individual's entry, in addition to the type of visa with which he entered, to determine whether he should be classified as a crewman. See Matter of G-D-M-, 25 I. & N. Dec. at 85. We agree with that approach, under which it was "apparent" that Gonzalez "was issued a visa as a crewman and entered the United States in pursuit of his occupation as a seaman." Id. The BIA therefore properly classified him as an "alien crewman."

Gonzalez's second argument is premised on a discrepancy between the NTA, which alleged that he had last entered the country as a nonimmigrant in transit in February 1997, and the Record of Deportable Alien, submitted at his merits hearing, which alleged that he had entered in March 1997 as a D-1 crewman. Gonzalez claims that the government violated 8 C.F.R. §§ 1003.30 and 1240.10(e) by failing to notify him until his removal hearing of what he describes as the "additional critical factual allegation" that he had last entered as a crewman. See 8 C.F.R. § 1003.30 (requiring, in removal proceedings, that any "additional or substituted charges of deportability" be lodged in writing, read to the respondent by the IJ, and that the respondent be given an opportunity to respond to those charges); id. § 1240.10(e) (same).

Though it might have been preferable for DHS to amend the factual allegations in the NTA, its failure to do so did not deprive Gonzalez of notice of any "additional or substituted

charges of deportability" against him, 8 C.F.R. § 1003.30, because his status as a crewman was not the basis for DHS's allegation that he was removable. As the NTA made clear, Gonzalez's removability was predicated upon the fact that he had remained in the country for longer than permitted. See 8 U.S.C. § 1227(a)(1)(B). In a written pleading filed with the immigration court, Gonzalez conceded that he was removable on that ground. Whether he specifically entered as a crewman was only relevant to his application for special rule cancellation of removal because of the statutory bar in section 240A(c) of the INA, see 8 U.S.C. § 1229b(c)(1), and the burden was on Gonzalez to prove by a preponderance of the evidence that he was eligible for that status, see 8 C.F.R. § 1240.64(a).

Furthermore, the agency did notify Gonzalez in advance of his merits hearing that he was statutorily ineligible for special rule cancellation of removal. In a February 2008 letter referring his NACARA application to the IJ, U.S. Citizenship and Immigration Services (USCIS) informed Gonzalez that he appeared to be barred from relief by section 240A(c). In a pre-hearing brief submitted to the IJ, Gonzalez both acknowledged receipt of that letter and admitted that he had last entered as a crewman. At the hearing, he agreed to the admission of the Record of Deportable Alien and had an opportunity to challenge its contents. We therefore find no merit to Gonzalez's claim that he was denied notice of, or an

-9-

opportunity to respond to, DHS's allegation that he was ineligible for special rule cancellation of removal.

Gonzalez's third and final argument is that, even if he last entered the United States as a crewman, it contravenes congressional intent to exclude him from NACARA relief. This argument has two prongs. First, Gonzalez claims that section 240A(c) of the INA was only intended to preclude from relief, in his words, "an alien who entered as a crewman prior to establishing eligibility for relief." Thus, Gonzalez argues, DHS should have granted his application for special rule cancellation of removal, because, but for his status as a crewman, he says "it is not disputed" that he was otherwise eligible for NACARA relief when he reentered the United States in 1997.

However, the government in fact vigorously disputes whether Gonzalez satisfied the other NACARA eligibility requirements at the time he reentered in 1997.[3] More importantly, the statute simply does not contain any exceptions. It plainly precludes from relief any alien "who entered the United States as a crewman subsequent to June 30, 1964." 8 U.S.C. § 1229b(c)(1). We cannot rewrite the statute. See, e.g., Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 500 (1st Cir. 2011).

---

[3] Among other things, the government notes that Gonzalez reentered in March 1997, and NACARA was not enacted until November 1997. See NACARA § 203, 111 Stat. at 2198 (enacted Nov. 19, 1997).

-10-

Second, Gonzalez claims that Congress cannot have intended what he describes as the "absurd" policy result here: he might have been eligible for NACARA relief if he had entered the country illegally in 1997 but is ineligible because he was lawfully admitted as a crewman. But that appears to be precisely the result Congress intended. Section 240A(c) bars crew members because of the relative ease with which they can enter the country. In Matter of Goncalves, the BIA examined the relevant legislative history and determined that Congress intended "to bar all occupational seamen who entered by reason of their occupation" to address the problem of "seamen[,] who have relatively easy access to the United States[,]" using "the seaman route to enter the United States for permanent residence." 10 I. & N. Dec. at 279; see also, e.g., Matter of Loo, 15 I. & N. Dec. at 603. "Our job is to effectuate the intent expressed in the plain language Congress has chosen, not to effectuate purported policy choices regardless of language." In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 80 (1st Cir. 2009).

Finding no legal or constitutional error requiring reversal, see Gonzalez-Ruano, 662 F.3d at 63, we deny the petition for review.