**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 12-2027

PABLO CRISTOBAL LETRAN,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Stahl, and Thompson,
Circuit Judges.

---

John P. Garan on brief for petitioner.
Julie M. Iversen, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, and Thomas B. Fatouros, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

---

June 7, 2013

---

**STAHL, Circuit Judge**.  Pablo Cristobal Letran is a native and citizen of Guatemala who has petitioned for our review of the denial of his applications for asylum and special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA).  See Pub. L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997).  We deny Letran's petition, because we lack jurisdiction to review his NACARA claim, and we agree with the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) that he is ineligible for asylum.

Letran entered the United States without inspection on December 20, 1988.  He applied for asylum in October 1993 but (inexplicably) did not receive an asylum office interview until twelve years later, in September 2005.  Letran was referred into removal proceedings before the Boston Immigration Court, where he renewed his asylum application and also sought withholding of removal, protection under the Convention Against Torture (CAT),[1] and special rule cancellation of removal under NACARA.  The IJ found Letran to be a credible witness but denied his application for special rule cancellation of removal because there was, in her

---

[1] Letran has waived any challenge to the IJ's denial of his applications for CAT protection and withholding of removal by failing to address those applications either before the BIA, see 8 U.S.C. § 1252(d)(1); Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006), or on appeal to this court, see Sugiarto v. Holder, 586 F.3d 90, 92 (1st Cir. 2009).

view, no evidence that he had registered as a member of the class action in <u>American Baptist Churches</u> v. <u>Thornburgh</u>, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC class member") -- a NACARA requirement discussed at more length below. As for Letran's asylum application, the IJ concluded that he had failed to establish both membership in a particular social group and either past persecution or a well-founded fear of future persecution. Letran appealed to the BIA, which affirmed the IJ's denial of both applications.

We begin with Letran's NACARA claim. "Congress enacted NACARA in 1997 to amend the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and permit individuals from certain countries to seek discretionary relief from removal or deportation under more lenient statutory standards that predated IIRIRA." <u>Gonzalez</u> v. <u>Holder</u>, 673 F.3d 35, 37 (1st Cir. 2012). Section 203 of NACARA, in particular, allows certain individuals from Guatemala to apply for what is known as "special rule" cancellation of removal. <u>See</u> NACARA § 203, 111 Stat. at 2196-99; 8 C.F.R. §§ 1240.64-1240.66. To satisfy the initial eligibility requirements, a Guatemalan applicant for special rule cancellation of removal must have either: (1) filed an asylum application on or before April 1, 1990; or (2) entered the United States on or before October 1, 1990 and registered by December 31, 1991 as an ABC class member. <u>See</u> 8 C.F.R. §§ 1240.60, 1240.61. Letran did not apply for asylum until 1993, but he did enter the

-3-

United States before October 1, 1990.  Thus, he might be eligible for special rule cancellation of removal if he could demonstrate that he registered as an ABC class member by December 31, 1991.

Before the IJ, Letran testified that, in what he thinks was October 1991, a notary public in Providence, Rhode Island helped him fill out an application for ABC benefits.  He said he then mailed the form to what he believes was Washington, DC, but he unfortunately did not retain a copy of it.  According to the notes of the asylum officer who interviewed him in 2005, however, Letran indicated at that time that he had not registered as an ABC class member.[2]  We need not resolve that discrepancy, because special rule cancellation of removal applications are subject to the jurisdiction-stripping provision codified at 8 U.S.C. § 1252, which forecloses our review of "discretionary determinations regarding requests for special rule cancellation of removal under NACARA, absent legal or constitutional error."  Gonzalez, 673 F.3d at 37 (quoting Gonzalez-Ruano v. Holder, 662 F.3d 59, 63 (1st Cir. 2011)) (internal quotation marks omitted).  The question Letran has raised on appeal -- whether there is sufficient evidence that he registered for ABC benefits by the December 1991 deadline -- is a purely factual one over which we lack jurisdiction.  See id.; accord Solis v. Holder, 490 F. App'x 744, 746 (6th Cir. 2012);

---

[2] The asylum officer's (handwritten) notes read as follows: "He says he was not aware of the ABC requirement.  There is no evidence of registration."

-4-

Gramajo v. Holder, 446 F. App'x 615, 615 (4th Cir. 2011); Ralda v. Att'y Gen. of U.S., 441 F. App'x 101, 103-04 (3d Cir. 2011); Ixcot v. Holder, 646 F.3d 1202, 1213-14 (9th Cir. 2011); Molina Jerez v. Holder, 625 F.3d 1058, 1069 (8th Cir. 2010).

Turning to Letran's asylum claim, an asylum applicant must demonstrate that he is a "refugee," 8 U.S.C. § 1158(b)(1)(A), who is unwilling or unable to return to his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," id. § 1101(a)(42)(A). Where, as here, "the BIA affirms an IJ's ruling while analyzing the bases offered for that ruling, we review the IJ's and BIA's opinions as a unit." Tay-Chan v. Holder, 699 F.3d 107, 111 (1st Cir. 2012). The agency's findings of fact are subject to the substantial evidence standard, meaning that we will accept those findings as long as "they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009)).

Letran's request for asylum was based on his alleged involvement in a student activist group between 1987 and 1988, when he was in college. He testified that he helped the group recruit new members and kept his class informed about the group's activities. Letran also helped organize a protest aimed at promoting awareness about government oppression in Guatemala and

-5-

testified that, as he was removing a disguise that he planned to wear to the protest, he was "grabbed" by an unidentified "group of people," who questioned him. He further stated that, while he was still in Guatemala, unidentified individuals came to his home, asked his aunt about his whereabouts, and, through his aunt, offered him a job, which he took as a sign that they wished to speak with him. Letran participated in one other protest, then apparently ceased his activism and spent another year studying at the university before coming to the United States.

Importantly, on appeal, Letran has not challenged the IJ's finding that he "was never actually persecuted in the past"; rather, he argues that he faces a well-founded fear of future persecution should he return to Guatemala. Letran "must pass both a subjective test (by showing that [he] genuinely fears persecution) and an objective test (by showing an objectively reasonable basis for that fear)." Lopez Perez v. Holder, 587 F.3d 456, 461-62 (1st Cir. 2009). We agree with the IJ and the BIA that Letran has failed to demonstrate that any fear he harbors is objectively reasonable. See id. Even putting aside the fact that Letran remained safely in Guatemala, and continued studying at the same university, for a year after the incidents upon which he has based his asylum application, almost twenty-five years have now passed since he arrived in the United States. Yet Letran has pointed to no evidence in the record that members of his alleged

-6-

social group -- student activists who were targeted in the 1980s during the Guatemalan civil war[3] -- or individuals with his claimed political opinion continue to face harm in Guatemala today.

Because Letran has failed to establish a well-founded fear of persecution on account of either his social group or his political opinion, we <u>deny</u> the petition for review.

---

[3] Because it does not affect our analysis, we accept the social group definition that Letran has used on appeal. We find no merit, however, to his contention that a remand is necessary here because the IJ and BIA defined his social group too narrowly, as (in his words) "members of the Association of Chemistry Students." The IJ broadly described Letran's asylum application as being "premised on his participation in a student group while he was studying pharmaceutical chemistry," and the BIA referred to Letran's "involvement as a student activist in activities that <u>included</u> a 'protest' event with the Association of Chemistry Students in 1987" (emphasis added). Both of those descriptions were consistent with Letran's asylum application, supporting materials, and testimony before the immigration court.